UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JEREMY LEE,<br><br>       Plaintiff,<br><br>  v.<br><br>TROY LAWRENCE, JR., in his personal capacity, MATTHEW WALLACE, in his personal capacity, JOSEPH CARBONI, in his personal capacity,  MURPHY PAUL, in his personal and official capacity, BATON ROUGE POLICE DEPARTMENT, CITY OF BATON ROUGE, and PARISH OF EAST BATON ROUGE.<br><br>       Defendants. | No. |

## COMPLAINT

1.  Plaintiff JEREMY LEE, by his undersigned attorney, for his complaint against Defendants, alleges as follows:

### INTRODUCTION

2.  This case involves a 21-year-old man who entered Baton Rouge Police Department custody on Jan. 9, 2023 healthy and intact, and left so badly beaten that the local jail refused to admit him until he was treated by a nearby hospital. There he was treated for broken bones and other injuries.

3.  The officer whose custody he entered, Troy Lawrence Jr., has an extensive record of injuring members of the public, disregarding their constitutional rights, and escalating routine interactions into hostile and even violent ones — all of which has cost the taxpayers of Baton Rouge a significant amount of money in civil rights lawsuits and departmental investigations.

His criminal conduct has already made national news, been flagged by federal judges, and is well known to BRPD Chief Murphy Paul and members of the Metropolitan Council.

4.   Time and again, BRPD has been warned in 2021 and 2022 that by keeping Ofc. Troy Lawrence Jr. on the force, they were all but guaranteeing that a Baton Rouge citizen would be killed or seriously injured. BRPD's deliberate indifference to those warnings caused Mr. Lee's injuries.

5.   Mr. Lee's injuries were inflicted at a torture warehouse known to BRPD as the "BRAVE Cave," a place where Baton Rouge citizens are taken, held incommunicado, denied counsel, and beaten. Its existence has been known to top BRPD brass since long before Mr. Lee's beating. It was shut down by the Mayor on August 29, 2023 after news of this impending lawsuit was broadcast on WAFB on August 28, 2023.

6.   On August 29, 2023, Ofc. Troy Lawrence, Jr. resigned from BRPD.

## JURISDICTION AND VENUE

7.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Louisiana law.

8.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b), because the defendants resides in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

9.   Plaintiffs JEREMY LEE is a citizen of the United States and a resident of Baton Rouge, Louisiana.

10.    Defendants TROY LAWRENCE, JR. (P10805), JOSEPH CARBONI (P10677), and MATTHEW WALLACE (P10704) are residents of Louisiana and are employed by the Baton Rouge Police Department. They works for Defendants BATON ROUGE POLICE DEPARTMENT, CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE. Defendant CITY OF BATON ROUGE is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of EAST BATON ROUGE PARISH. Defendant PARISH OF EAST BATON ROUGE is a political subdivision of the State of Louisiana. The Parish's governing authority is consolidated with the government of the CITY OF BATON ROUGE.

11. BRPD CHIEF MURPHY PAUL is the final policymaker for the municipal defendants as it pertains to official policy governing use of force, arrests, searches, and respect for the First Amendment rights of Baton Rouge citizens by Baton Rouge Police Department employees.

## PLAINTIFF'S FACTUAL ALLEGATIONS

### Initial Arrest

12. On January 9, 2023, police arrived in front of a house in the area of 5400 Cadillac Street, Baton Rouge, Louisiana.

13. Mr. Lee was arrested by Det. Wallace and Ofc. Lawrence, without reasonable suspicion or probable cause.

14. He was placed in the back of a BRPD vehicle.

15. Minutes after arriving on the scene, while searching for and discussing possible evidence with Det. Matthew Wallace, Ofc. Lawrence turned off the audio on his body-worn camera.

16. Less than three minutes later, with his body-worn camera audio still off, Ofc. Lawrence and Det. Wallace approached the police car in which Mr. Lee was sitting.

17. They began swearing at him and pushing him.

18. Upon opening the backseat door, Ofc. Wallace commanded Mr. Lee to "get your ass over here."

19. Although his audio was on during this exchange, Det. Wallace also periodically turned his body-worn camera off and on throughout the investigation during the day and the interrogations in the evening.

20. Ofc. Lawrence also turned his camera on and off, and frequently muted his body-worn, on the afternoon and evening in question.

21. According to Mr. Lee's arrest report, Mr. Lee is 5'6", 125 pounds.

22. Both Ofc. Lawrence or Det. Wallace are substantially taller and substantially larger than Mr. Lee.

23. Throughout this interaction, the two officers repeatedly accused Mr. Lee of "resisting."

24.    Mr. Lee was not resisting.

25.    Mr. Lee stated that he was not resisting and that he would comply with whatever they wanted.

26.    Despite Mr. Lee's cooperative words and actions, Ofc. Lawrence and Det. Wallace continued to push a handcuffed Mr. Lee, pull his arms, and force him down in the middle of a paved street, where they pulled down his pants to search him.







27. Mr. Lee repeatedly told the officers, who were shoving and throwing Mr. Lee around, that they were hurting him.

28. While Mr. Lee was handcuffed and on the ground, Ofc. Lawrence told him, "I'm about to bat the living crap out of you."

29. Frightened and seeking some kind of fairness, Mr. Lee told the officers to "turn your [body-worn] camera on" and to "bat me then."

30. Mr. Lee continued to repeatedly inform the officers that they are hurting him even though he is trying to cooperate.

31.    Ofc. Lawrence and Det. Wallace continued to act unprofessionally toward Mr. Lee. The following conversation took place shortly after the strip-search:

> Lee: What am I getting arrested for?
>
> Wallace: You're being detained.
>
> Lee: How? For what?
>
> Wallace: Because I said so.

32.    The Louisiana Constittion provides "When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention."

33.    Det. Wallace complied with the Louisiana Constitution when he responded to Mr. Lee.

<u>Ofc. Lawrence Nearly Provokes a Riot by Fighting with Bystanders</u>

34.    As the police presence in the area increased, a crowd gathered in the neighborhood around a local grocery store to see what was going on.

35. Ofc. Lawrence stayed in the area with several other officers, periodically cutting his body cam audio off and on.

36. Ofc. Lawrence and one woman got into a back-and-forth that consists of him telling her to "keep talking" and daring her to "show me."

37. After arresting her, Ofc. Lawrence walked away from the scene for about half an hour.

38. Instead of cooling off, Ofc. Lawrence returned to the crowd around the grocery store, which by this point had largely settled, ready to find – and if he had to, create – further conflict.

39. One woman asked an officer about the status of the search warrant for the house – the reason officers are in the area. The two had a civil back-and-forth.

40. Ofc. Lawrence, however, stepped in and started to argue with the woman. Among his comments were "how are you going to tell me what I can do at my job and what I can't?"

41. A male bystander then joined the conversation.

42. Angered, Ofc. Lawrence called the man "ignorant" and bragged about how much money he had.

43. The comment caught the attention of several bystanders and elicited an immediate, negative reaction from the crowd.

44. Sensing the sudden mood change in the crowd almost immediately following Ofc. Lawrence's arrival and provocation of bystanders, another BRPD officer had to step in to separate Ofc. Lawrence from the now-agitated crowd.

45. After being separated, Ofc. Lawrence tried to walk back over to the crowd to taunt them more, but two officers intervened to talk him down and walk him away.

46. One officer explicitly told Ofc. Lawrence to "chill out."

BRPD's "Torture Warehouse"

47. After the unnecessary strip search and Ofc. Lawrence's conflict with the crowd, Mr.

Lee was not transported to the police station, but to a torture warehouse known to BRPD staff as

"the BRAVE Cave."

48. There, he was beaten by BRPD officers.

49. When first arriving to this torture warehouse, Mr. Lee was handcuffed in a holding

cell with two other arrestees.



50. Mr. Lee was removed from the holding cell by three officers: Troy Lawrence, Jr.,

Matthew Wallace, and Joseph Carboni.

51. Mr. Lee was alone with the three officers in a separate warehouse room.

52. There he was repeatedly kicked and punched by the officers.

53. Mr. Lee's screams for help and screams in pain could be heard throughout the

facility.

54. The officers laughed at and mocked Mr. Lee for screaming for help.

55.    The officers beat Mr. Lee so badly that they fractured his rib and caused visible damage to his face.

56.    Soon after the beating, Mr. Lee was interrogated by BRPD.

57.    BRPD officers made sure their body-worn cameras were turned "off" before beating Mr. Lee.

58.    Jeremy Lee subpoenaed BRPD for camera footage from within the warehouse, but BRPD responded that no such footage exists.

59.    Mr. Lee suffered physical injuries so severe, the local jail rejected his admission until he received medical help.

60.    He was taken to Our Lady of the Lake North Baton Rouge Urgent Care Department, where they officially diagnosed him with a fractured left rib, chest pain, and left facial pain. Mr. Lee also reported trouble breathing.

<u>Bogus Criminal Charges</u>

61.    Mr. Lee was not charged with any criminal wrongdoing that led to his arrival in the BRPD Torture Warehouse.

62.    The only criminal charge he received was an alleged "Resisting an Officer" (i.e., being beaten by Defendants) in violation of La. R.S. 14:108, billed in the 19th Judicial District Court under docket number DC-23-01703.

63.    Louisiana has long recognized the absolute right of those arrested without probable cause to use force to resist their arrest.

64.    The charge against Mr. Lee rests on the materially false (and contradictory) allegations contained in sworn police reports authored by Wallace and Lawrence.

## II.    TROY LAWRENCE JR.'S TROUBLED HISTORY (AND POLICYMAKERS' DELIBERATE INDIFFERENCE TO THE OBVIOUS CONSEQUENCES OF HIS RECURRING MISCONDUCT).

65.    During Troy Lawrence Jr.'s short tenure as a BRPD officer, his dangerous temper has led to numerous Internal Affairs investigations.

66.    Numerous incidents have involved Troy Lawrence Jr. needless escalating ordinary encounters, strip-searching young Black men, and responding to criticism with violence.

67.    Troy Lawrence, Jr. is the son of BRPD Deputy Chief Troy Lawrence, Sr.

68.    Apart from Chief Murphy Paul, Deputy Chief Troy Lawrence Sr., is currently the highest paid employee of BRPD.

69.    No BRPD employee with Troy Lawrence Jr.'s seniority has been suspended by BRPD more times for misconduct (without being terminated) than Troy Lawrence Jr.

70.    No BRPD employee has been suspended by BRPD more times for misconduct (without being terminated) than Troy Lawrence Jr. in the past two years.

### A.    CLARENCE GREEN INCIDENT

71. Shortly after joining the force, Ofc. Lawrence's misconduct made national news when he strip-searched a minor child in public; illegally searched that child's mother's apartment without a warrant; and then threated to beat a handcuffed detainee.

72. Judge Brian A. Jackson—even without being presented with evidence of Troy Lawrence, Jr.'s threats to beat Clarence Green—described the January 1, 2020 incident as follows: "[T]he state agents in this case demonstrated a serious and wanton disregard for Defendant's constitutional rights, first by initiating a traffic stop on the thinnest of pretext, and then by haphazardly invading Defendant's home (weapons drawn) to conduct an unjustified, warrantless search. Such an intrusion, in abject violation of the protections afforded by the Fourth Amendment

of the United States Constitution, which protects citizens against unwarranted governmental intrusions in their homes, may justifiably be considered to be a trespass subject to prosecution under La. R.S. 14:63."

73. After the home search, when BRPD officers attempted to pressure Ms. Green into consenting to allow them to take a DNA sample from her minor child, Clarence Green (from the back of a police car) advised his mother to call a lawyer.

74. Troy Lawrence Jr. then threatened to beat Clarence Green while he was handcuffed and locked in the back of a police car, stating: "If you don't shut the fuck up, I'm gonna come in and I'm gonna fuck you up. You think I'm playing with you? I will fuck you up."

75. Despite Judge Jackson's ruling on December 29, 2020, the filing of a civil rights lawsuit on January 2, 2021, and Baton Rouge Metropolitan Council's ratification of a $35,000 settlement on April 2021, no disciplinary investigation into Ofc. Lawrence was even *started* until (at earliest) May 24, 2021.

76. The investigation did not begin until after BRPD was contacted by journalists who had reviewed the footage that was released by the Green Family.

77. The "disturbing" footage of Ofc. Lawrence's misconduct was featured on the national nightly news program CBS EVENING NEWS on May 27, 2021.

78. On May 28, 2021, Chief Murphy Paul convened a press conference to address the national controversy caused by Troy Lawrence, Jr. and his colleagues.

79. At the press conference, the first question posed by journalists was: "This happened almost 17 months ago. Would we be here talking about this today if that video had not come out?" Chief Paul responded: "Absolutely we would have. . . . We just had the last hearing, what was it, the 13th I believe? The 13th of this month was our last hearing. And we still have two other officers that we

have not completed that investigative process. So yes, we still would have made that information available to the public once those administrative processes have concluded."

80. Chief Paul omitted that the investigation into Ofc. Lawrence was not started before May 24, 2021; in fact, no investigation of Ofc. Troy Lawrence Jr. was started as a result of Judge Jackson's ruling, the lawsuit, or the civil rights settlement.

81. BRPD conducted an investigation into Troy Lawrence Jr.'s role in the Green Family case and Chief Paul personally reviewed the results.

82. BRPD cleared Ofc. Lawrence of any violation of a "use of force" or search-and-seizure policies in connection with the initial stop of, initial search of, and threatened violence against Clarence Green and his brother.

83. BRPD Chief Paul personally defended the lawfulness and appropriateness of the stri-searches of Clarence Green at a public press conference.

84. On January 19, 2023, Ofc. Lawrence testified under oath about the aforementioned incident.

85. Ofc. Lawrence swore that he "was suspended for cursing, using profanity."

86. Ofc. Lawrence swore that he had no idea he was one of the "John Doe" defendants named in Clarence Green's civil rights suit.

87. Ofc. Lawrence swore that he had no recollection of being featured on a national news broadcast or that Chief Paul had convened a press conference to discuss the incident he was involved in.

88. Ofc. Lawrence swore that he did not believe that he had assaulted Clarence Green by threatening to "fuck him up" while he was handcuffed.

89. Ofc. Lawrence received no additional training, counseling, or anger management in connection with this incident.

### B.    SHERMANIE REED INCIDENT

90. Ofc. Lawrence also used force and violence against another motorist, Shermanie Reed, who (correctly) told him he was acting unprofessionally on October 31, 2020.

91. The similarities to this incident are striking: there, Ofc. Lawrence arrived on the scene, began cursing at the parties, began pushing individuals who posed no physical threat to him, ordered motorists into their cars, ripped a motorist out of their car, falsely arrested them, swore out a self-serving police report, injured the civilian, and then released her.

92. As in this case, Ofc. Lawrence grossly misrepresented the details of the encounter in a police report (and subsequent Internal Affairs investigation).

93. As in this case, BRPD insisted that Ofc. Lawrence's conduct was consistent with BRPD policy (apart from muting his body-worn camera).

94. BRPD conducted an investigation into the case and Chief Paul personally reviewed the results.

95. Ofc. Lawrence's interview with Internal Affairs included numerous obvious false statements.

96. The investigation cleared Ofc. Lawrence of all wrongdoing in that case apart from muting his body-worn camera.

97. In September 2021, undersigned counsel wrote Parish Attorney Andy Dotson to alert him to Ofc. Lawrence's misconduct and to highlight misrepresentations in his Internal Affairs interview. The letter sought a meeting with Chief Paul regarding the incident.

98. Andy Dotson did not respond.

99.     Ms. Reed sued Ofc. Lawrence and Chief Paul for false arrest, excessive force, and First Amendment retaliation on October 30, 2021.

100.    Her complaint emphasized that Ofc. Troy Lawrence already "boast[ed] a lengthy record of professional misconduct during his short career."

101.    In numerous conversations in late 2021 and early 2022, BRPD's attorney was advised by undersigned counsel that Ofc. Troy Lawrence was likely to maim or seriously injure someone in a future incident if they failed to intervene.

102.    At Ofc. Lawrence's deposition on January 19, 2023, he repeatedly lied about the facts of the case.

103.    On January 21, 2023, BRPD's counsel was sent another letter highlighting examples of Ofc. Lawrence's perjury in his deposition and reiterating counsel's ongoing concerns: "Officer Lawrence is going to seriously injure or kill someone if he remains on the force. It is disheartening to learn that, since the filing of this lawsuit, Officer Lawrence has been *suspended* at least three (3) additional times for on-the-job misconduct and is currently the subject of an internal investigation for additional police brutality in December 2022."

104.    Within two months of Ofc. Lawrence's deposition, BRPD agreed to a $55,000 settlement to resolve the claims arising from that incident.

105.    Ms. Reed was willing to settle for $40,000 and an apology, but BRPD refused to authorize the settlement.

106.    BRPD still maintains that Ofc. Lawrence did nothing wrong apart from muting his body-worn camera during his encounter with Ms. Reed.

107.    Ofc. Lawrence received no additional training, counseling, or anger management in connection with this incident.

108.    Throughout Shermanie Reed's lawsuit against Troy Lawrence Jr. and BRPD, the Department withheld information from their own lawyers regarding Troy Lawrence's misconduct. The department even altered and redacted responsive documents to hide the names of witnesses who would have pertinent information regarding Ofc. Lawrence's violent tendencies.

109.    Throughout the litigation, BRPD's counsel was repeatedly advised by Ms. Reed's counsel that Ofc. Lawrence posed an ongoing danger to the people of Baton Rouge, and that it was likely he would maim or kill someone if he wasn't removed from the force.

### C.    TROY LAWRENCE ALSO TRIES TO FIGHT HIS COLLEAGUES

110.    Ofc. Lawrence has twice been the subject of Internal Affair investigations for altercations with a 20-year veteran of BRPD, Cody Gunter.

111.    On July 19, 2021, Ofc. Lawrence disregarded a direct order from Sgt. Gunter, telling him, "I don't give a fuck who you are."

112.    Ofc. Lawrence was suspended for 25 days.

113.    On March 6, 2022, Ofc. Lawrence called Sgt. Gunter "a pedophile" and attempted to fight him in public.

114.    Ofc. Lawrence stated, "I'll fuck you up right here in front of everybody."

115.    Ofc. Lawrence then took off his vest and attempted to fight Sgt. Gunter, who walked away to deescalate the situation.

116.    Ofc. Lawrence then called Sgt. Gunter "a pussy" a told him that he was going to "kick [his] ass."

117.    The events occurred in front of a crow of college students.

118.    When Sgt. Gunter returned to his car, Ofc. Lawrence followed him, yelling, "Get out the car you pussy."

119.    Under oath, Sgt. Gunter explained to Internal Affairs that he believed Ofc. Lawrence was dangerous and that he did not want to work in his presence. He expressed his fear: "I don't know what he is capable of."

```
issue with me."


 -Do you have any personal vendettas against Ofc. Lawrence?
 ▮▮▮▮▮▮▮ replied, "No."


 -Is there any reason that you feel you cannot work with or
 in the presence of Ofc. Lawrence and if so, please explain?
 ▮▮▮▮▮▮▮ replied, "I would not be comfortable working in
 the presence of Ofc. Lawrence because I don't know what he
 is capable of.  I feel that he has a lot anger towards me
 and it's not going away."
```

137.    Ofc. Lawrence was suspended for this latter incident, as well.

138.    In at least one of the incidents, Ofc. Troy Lawrence Sr. was made aware of his son's wrongdoing as the incident was happening, and was asked by other BRPD officials to intervene with his son

139.    Ofc. Troy Lawrence Sr. was told that his son would be arrested if he did not promptly report to superior officers in connection with one of his altercations with Sgt. Gunter.

### D.    ADDITIONAL INTERNAL AFFAIRS INVESTIGATIONS

140.     On December 22, 2022, local television station reported a story entitled "BRPD Opens Internal Investigation after Cell Phone Video Captures Violent Confrontation." *See* https://www.wbrz.com/news/brpd-opens-internal-investigation-after-cell-phone-video-captures-violent-confrontation/ (last accessed June 21, 2023).

141.     The video in question depicts Ofc. Troy Lawrence, Jr. repeatedly striking a handcuffed individual in the back of a police car.

142.     When questioned about the incident under oath on January 19, 2023, Ofc. Troy Lawrence Jr. claimed to have no recollection of the incident and no knowledge of any Internal Affairs investigation into the incident.

143.     During his deposition, Ofc. Lawrence also revealed that he had been suspended on at least one other occasion in 2022, although this information was never disclosed during discovery.

### E.    CHAVIS/SANDERS INCIDENT

140.     In yet another recent incident, Ofc. Lawrence publicly attacked two young Black men after they (correctly) criticized him for acting unprofessionally.

141.     On October 8, 2022, Ofc. Lawrence picked a fight with two young men—Holden Sanders and Emanuel Chavis—after BRPD officers shot their cousin, Malik Chavis.

142.     Ofc. Lawrence profanely ordered the men to leave the grounds of a hospital.

143.     When the men informed him that he was acting unprofessionally, he physically attacked them both.

144.     The assault involved grabbing Holden Sanders by the neck and hair, as Ofc. Lawrence unsuccessfully sought to rip him out of his car.

145.    Other (non-BRPD) officers witnessed the attack, but refused to join in Ofc. Lawrence's brutality, even as he screamed at them: "CAN Y'ALL FUCKING HELP?! . . . WHAT THE FUCK ARE Y'ALL DOING?! YOU'RE NOT GOING TO HELP?!"

146.    He also physically attacked their mother.

147.    Ofc. Lawrence sadistically placed extremely tight handcuffs on Emanuel Chavis, and in response to his repeated requests to loosen the cuffs, responded: "Well, whenever you fight with me . . . that's what happens."

148.    As in this case, Ofc. Lawrence made up false allegations that Chavis and Sanders engaged in criminal conduct justifying his brutality.

149.    All criminal charges against both men were recently dropped.

## III.    BRPD'S LONG HISTORY OF RETALIATING AGAINST CRITICS AND FOSTERING A CULTURE OF IMPUNITY FOR POLICE VIOLENCE

150.    Ofc. Lawrence's longstanding pattern of retaliating against those who tell him he is acting unprofessionally is par for the course: it is precisely the same thing BRPD Chief Murphy Paul has done throughout his tenure.

### A.    Clarence Green Retaliation

151.    When Ofc. Lawrence's wrongdoing in the Clarence Green matter became a national news story, BRPD filed a petition in state court seeking to have the Green Family's attorney held in contempt for releasing the body-worn camera footage; the statutory penalty for the species of contempt sought by BRPD was up to six months' imprisonment.

152.    In a 92-page opinion, Judge John W. deGravelles subsequently issued an injunction halting this prosecution, rejecting the applicability of "*Younger* abstention" and "find[ing] the overwhelming evidence in this case shows that the City/Parish acted in bad faith and in retaliation against Frampton for Frampton's issuance of a press release and Video which cast BRPD in a bad

light." *Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, 21-CV-362-JWD-SDJ, 2022 WL 90238, at *35 (M.D. La. Jan. 7, 2022).

153.    Baton Rouge taxpayers paid over $85,000 to settle the lawsuit.

154.    BRPD still maintains that they did nothing wrong in retaliating against the attorney who served as a whistleblower in exposing Ofc. Lawrence's misconduct.

**B.    Alton Sterling Retaliation**

155.    In response to BRPD misconduct, thousands of Louisiana residents protested BRPD in 2016.

156.    BRPD responded with mass arrests of the protesters.

157.    Protestors argued the arrests were in retaliation for their exercise of their First Amendment rights to criticize BRPD, and their Fourth Amendment rights.

158.    They asserted *Monell* claims against BRPD and Baton Rouge, arguing that the wrongdoing was not just the result of individual official wrongdoing, but rather a policy or custom attributable to Baton Rouge itself.

159.    This Court rejected defendants' efforts to dismiss the protestors *Monell* claims. *See* Ruling and Order, *Imani v. City of Baton Rouge*, Case 3:17-cv-00439-JWD-EWD, Dkt. 347 (July 14, 2022).

160.    The City of Baton Rouge settled the case midtrial for $1,170,000.

**C.    Internal Whistleblower Retaliation**

161.    After criticizing BRPD leadership, BRPD union vice president Siya Creel was unlawfully terminated by BRPD Chief Murphy Paul.

162.    The Municipal Fire & Civil Service Board unanimously decided Creel was wrongfully terminated.

163.    East Baton Rouge City-Parish ultimately paid $90,000 to settle Creel's claims of retaliation.

164.    A veteran officer in the BRPD Internal Affairs Division, John Dauthier, has also accused BRPD Chief Murphy Paul of internal wrongdoing, publicly claiming "blatantly partial doctrine for enforcing policies of the BRPD."

165.    Dauthier has alleged that he was retaliated against in part because he criticized BRPD leadership, whereas other officers who were well-liked by BRPD leadership were either not disciplined or less severely disciplined for similar wrongdoing.

### D.    Systemic Failings

166.    In April 2023, the non-profit news outlet VERITE released an extraordinary six-part expose called "In The Dark," documenting systemic BRPD violence and hostility toward those who questioned BRPD. *See* https://veritenews.org/tag/baton-rouge-police-department/ (collecting stories).

167.    Among other revelations, VERITE reported that the *sole* police officer investigated (let alone disciplined) for wrongdoing in connection with the 2016 protests was a BRPD officer who was investigated for questioning the legality of the police response at the protest.

168.    This reporting was accurate.

169.    VERITE reported that 100% of use-of-force complaints made in 2017 were adjudicated "exonerated" or "not sustained" by BRPD Internal Affairs.

170.    This reporting was accurate.

171.    The reporting also documented a department plagued by a culture of impunity, with meritorious citizen complaints regularly disregarded.

172.     Apart from minor errors that have since been included flagged as "Corrections" to the public available articles, there are no inaccuracies in the VERITE reports.

### E.     Cover-Up of "the BRAVE Cave" torture warehouse and this Incident

173.     On January 17, 2023, Mr. Lee's mother emailed Chief Paul to alert him that her son was kidnapped and severely beaten by the arresting officers.

174.     Chief Paul personally called her to acknowledge receipt of the complaint.

175.     Mr. Lee filed an Internal Affairs complaint against the arresting officers on April 18, 2023.

176.     Internal Affairs acknowledged receipt of the complaint on April 25, 2023.

177.     When local media inquired about the incident in late August 2023, BRPD representatives falsely stated that no Internal Affairs complaint had been filed.

178.     No action whatsoever in this matter was taken until a local television news station broadcast a report about the torture warehouse (and this impending lawsuit) on August 28, 2023.

### COUNT I(a)-(b)

### 42 U.S.C. § 1983 – Fourth Amendment Excessive Force

179.     Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

180.     As more fully described above, Defendants Troy Lawrence, Jr. and Matthew Wallace deprived Plaintiff Mr. Lee of his constitutional right to be free from excessive force.

181.     Defendants Lawrence and Wallace used excessive force **(a)** when they first grabbed Mr. Lee by the arms, when they dragged him from the car, and when they forcibly

arrested and strip-searched him. They again used excessive force **(b)** when, along with

Defendant Joseph Carboni, they fractured Mr. Lee's rib and bruised his face and body in the off-

site BRPD warehouse. The force was excessive to the need (which was none, given Mr. Lee's

explicit willingness to compliance) and was objectively unreasonable.

182. As a direct and proximate result of this deprivation of his constitutional right to be

free from excessive force, Plaintiff suffered injuries, including, but not limited to, significant

physical injuries and emotional distress.

## COUNT II

### 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Search

183. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set

forth herein.

184.    As more fully described above, Defendants Troy Lawrence, Jr. and Matthew

Wallace deprived Plaintiff Mr. Lee of his constitutional right to be free from unreasonable

searches.

185.    Though claiming Mr. Lee was merely "detained" at the time, they performed a

violent and invasive public strip-search on him, grabbing his genitals and pulling his pants to his

knees. The search far exceeded the limits of a "*Terry* frisk" that would be permissible absent a

full custodial arrest and was unlawful under Louisiana law, as well.

186.    As a direct and proximate result of this deprivation of his constitutional right to be

free from unreasonable searches, Plaintiff suffered injuries, including, but not limited to,

significant physical injuries and emotional distress.

## COUNT III

### 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure

187.   Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

188.   As more fully described above, Defendants Troy Lawrence, Jr., Matthew Wallace, and Joseph Carboni deprived Plaintiff Mr. Lee of his constitutional right to be free from unreasonable seizure.

189.   Defendants arrested Mr. Lee without a warrant and without probable cause to believe he committed a criminal offense, and held him incommunicado at the "BRAVE Cave" for purposes of beating him.

190.   As a direct and proximate result of this deprivation of his constitutional right to be free from unreasonable seizures, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

**COUNT IV**

**42 U.S.C. § 1983 - First Amendment Retaliation**

191.   Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

192.   As more fully described above, Defendants Troy Lawrence, Jr. and Matthew Wallace deprived Mr. Lee of his constitutional right to be free from retaliation under the First Amendment to the United States Constitution.

193.   Specifically, Mr. Lee alleges that he was engaged in constitutionally protected activity in (correctly) criticizing Ofc. Lawrence and Det. Wallace's misconduct; Ofc. Lawrence and Det. Wallace were substantially motivated against the plaintiff's exercise of constitutionally protected conduct when they decided to arrest him because of that criticism; and by arresting and

using excessive force against Mr. Lee, they caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

194.    As a direct and proximate result of this deprivation of his constitutional right to be free from retaliation for First Amendment activity, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

**COUNT V**

**COUNT V – 42 U.S.C. § 1983 –** *Monell* **Liability for Each of the Foregoing Constitutional Violations (COUNTS I-IV)**

195. Plaintiffs repeat and realleges all of the paragraphs in this complaint as if fully set forth herein against BRPD and all municipal defendants.

196. Plaintiffs further allege that BRPD maintains and implements formal written and unwritten policies regarding use-of-force, strip-searches, and responses to citizen criticism that caused the constitutional violations alleged in this complaint. This includes the formal BRPD policy of maintaining a torture warehouse known as "the BRAVE Cave" where constitutional deprivations are commonplace.

197. Plaintiffs further allege that there is a pattern, practice, custom, and informal policy of false arrests, illegal searches, excessive force, and retaliation at BRPD; that this widespread recurring practice is so permanent and settled that it constitutes formal policy; and that adherence to that practice caused the constitution violations at issue in this complaint. This includes, but is not limited to, the maintenance of a torture warehouse known as "the BRAVE Cave" where constitutional deprivations are commonplace.

198.    Plaintiffs further allege that Ofc. Lawrence was inadequately trained; that this inadequate training caused their constitutional injuries; and that BRPD and the Parish-City was deliberately indifferent to the constitutional rights injured.

199.    Plaintiffs further allege that Ofc. Lawrence was inadequately supervised; that this inadequate supervision caused their constitutional injuries; and that BRPD and the Parish-City was deliberately indifferent to the constitutional rights injured.

200.    Plaintiffs further allege that Ofc. Lawrence was inadequately disciplined; that this inadequate discipline caused their constitutional injuries; and that BRPD and the Parish-City was deliberately indifferent to the constitutional rights injured.

201.    Plaintiffs further allege that Ofc. Lawrence's conduct has been authorized, approved, and ratified by Chief Murphy Paul, who wields final policymaking authority for BRPD in the relevant fields.

**Count VI**
**42 U.S.C. § 1983 :  Failure to Intervene**

202.    It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement Deputies in their presence" and a police officer may be held liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." In the instant matter, BRPD officers Wallace and Carboni failed to intervene when officer Lawrence was using excessive force against Mr. Lee. Further, Officers Lawrence and Carboni failed to intervene when Officer Wallace was using excessive force against Mr. Lee. Moreover, Officers Lawrence and Wallace failed to intervene when officer Carboni was using excessive force against Mr. Lee.

## COUNTS VII, VIII, IX, X, XI

### State Law Claims - Assault, Battery, False Imprisonment, Defamation, Negligence

203.        Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

204.        As more fully described above, Plaintiff Mr. Lee asserts state law claims of assault (Count VII), battery (COUNT VIII), and false imprisonment (COUNT IX) against Defendants Lawrence, Wallace, and Carboni in violation of Louisiana law. He alleges that Lawrence and Wallace defamed him (COUNT X) when filing false police reports against him. He alleges that all three and Chief Paul are liable for negligence that proximately caused his injuries (COUNT XI). These claims include all of the previous alleged wrongdoing discussed above.

## COUNT XII

### Respondeat Superior

205.        At all relevant times, the individual defendants were acting in the course and scope of employment as Baton Rouge police officers and were under the control, direction, and supervision of their employer. Defendants BRPD and City/Parish of Baton Rouge are liable for the aforementioned state-law torts under the doctrine of respondeat superior.

206.        Plaintiffs have been injured by the foregoing, having suffered physical injuries,

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants. Plaintiff prays for the awarding of declaratory relief and compensatory damages, costs and attorneys' fees against all Defendants, and punitive damages against all Defendants; and for such further and additional relief as this Court may deem appropriate and just. A jury

trial is demanded on all issues.

Respectfully submitted,

**Ryan K. Thompson, LA Bar #38957**
**TRIAL ATTORNEY**
660 Richland Ave
Baton Rouge, LA 70806
T: (323)271-8032
E: RKTsocialjustice@gmail.com

**Jessica F. Hawkins, LA Bar #38263**
P.O. Box 5072
Baton Rouge, LA 70802
T: (915)217-9192
E: jessicahawkins0421@gmail.com

**Thomas W. Frampton, LA Bar # 35775**
580 Massie Road
Charlottesville, VA 22903
T: (202) 352-8341
E: tframpton@law.virginia.ed**u**

**COUNSEL FOR JEREMY LEE**