UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JEREMY LEE, <br><br> Plaintiff <br><br> v. <br><br> TROY LAWRENCE, JR., in his personal capacity, MATTHEW WALLACE, in his personal capacity, JOSEPH CARBONI, in his personal capacity, MURPHY PAUL, in his personal and official capacity, BATON ROUGE POLICE DEPARTMENT, CITY OF BATON ROUGE, and PARISH OF EAST BATON ROUGE, <br><br> Defendants. | Civil Action No. 3:23-cv-1229-SDD-SDJ <br><br> Judge Shelly Dick <br><br> Magistrate Judge Scott D. Johnson |

## *EX PARTE* MOTION TO PRESERVE EVIDENCE AND PERMIT IMMEDIATE INSPECTION OF THE BRPD TORTURE WAREHOUSE

This is the first of several—likely, many—federal lawsuits arising from the criminal activities of the Baton Rouge Police Department (BRPD) undertaken at the torture warehouse known to BRPD as the "BRAVE Cave." *See, e.g.*, *Brown v. BRPD, et al.*, No. 3:23-cv-01313-JWD-EWD (Sept. 18, 2023, M.D. La) (civil rights action brought by a grandmother who was illegally strip searched and sexually assaulted by BRPD officers in the torture warehouse). It is critical to preserve immediately all evidence related to BRPD's operation of its torture warehouse. Defendants remain in possession of the facility; high-ranking BRPD officials were just arrested moments ago for destroying video evidence of Street Crimes Unit misconduct; and, as explained below, have been unable or unwilling to preserve evidence of the horrors that occurred there.

1

The need is particularly acute given: (1) Defendants' repeated refusal, since September 6, 2023, to confer regarding spoilation, *see* **Exhibit C**; (2) recent statements from Defendant Murphy Paul (as reported by WAFB) that critical video footage was "unaccounted for"[1]; and (3) recent statements by Defendant Murphy Paul that he had "directed [his] staff" to undertake "construction" at the facility in response to this lawsuit[2] and statements by city officials that the facility should not only be "shut down," but "gone."[3] Perhaps most urgently, just minutes ago, local news reported that individual officers in the Street Crimes Unit (including Defendant Troy Lawrence Jr.'s father, Deputy Chief Troy Lawrence, Sr.) have been arrested for destroying video footage of beatings by Street Crimes Unit officers similar to the one Mr. Lee received.[4]

Based on the exigent circumstances of this case, Plaintiff Jeremy Lee moves *ex parte*[5] for an Order directing the Defendants: (a) to immediately preserve any existing evidence of, or related

---

[1] *See* Exhibit A (Anti-Spoilation Letter); *see also* WAFB, *I-Team: DA says meeting to discuss Brave Cave criminal investigation, case review, imminent*, Sept. 19, 2023 ("The chief admits it's a challenge that's made even more difficult by a potential lack of video. With chunks of body camera video unaccounted for, he says they are relying on video from inside the facility itself to fill in some of the blanks on what may have gone on there. The only problem is the video recorded inside the Brave Cave is routinely deleted for capacity purposes, so it's unclear how far back it goes.") (https://www.wafb.com/2023/09/19/i-team-da-says-meeting-discuss-brave-cave-criminal-investigation-case-review-imminent/).

[2] Statement of Murphy Paul, Aug. 29, 2023, at 12:30 (https://www.facebook.com/batonrougepolice/videos/1534367750639557)

[3] Statement of Council Member Aaron Moak, Sept. 27, 2023, at 1:33:50 (available at https://batonrougela.new.swagit.com/videos/272704) ("I want the place shut down. I want everything . . . I know it's been shut down. I want it *gone*.").

[4] Chris Nakamoto, *Three BRPD officers, including Dep. Chief Lawrence, surrender to face charges*, WBRZ, Sept. 28, 2023 (https://www.wbrz.com/news/nakamoto-three-brpd-officers-including-dep-chief-lawrence-surrender-to-face-charges); Lara Nicholson, *3 Baton Rouge police officers arrested, 1 facing charges*, THE ADVOCATE, Sept. 28, 2023 (https://www.theadvocate.com/baton_rouge/news/crime_police/3-baton-rouge-police-officers-arrested-1-facing-charges/article_e436e41e-5e1b-11ee-a4e3-37b064deb7e1.html#tncms-source=featured-top).

[5] Counsel for defendants City of Baton Rouge, Parish of East Baton Rouge, and Baton Rouge Police Department refused consent to file. *See* Exhibit B (Correspondence).

2

to, the facility known as the "Brave Cave," including maintaining all structures and fixtures in their current states; and (b) to allow Plaintiff's counsel and their employees and/or contractors to enter onto and inspect the entire premises, immediately.

## BACKGROUND

### A. The Torture Warehouse

BRPD's torture warehouse stands in a fenced-off lot several hundred feet from BRPD's First Precinct.[6] Inside the warehouse, BRPD officers routinely subjected Baton Rouge citizens—apparently, for years—to illegal detentions and interrogations, without due process or access to counsel, and to illegal strip and body cavity searches. BRPD officers also sexually, physically, and psychologically abused citizens inside the facility. *See* ECF 1 at ¶¶ 5, 47-60.

On January 9, 2023, BRPD officers illegally imprisoned Plaintiff inside the torture warehouse, where they beat him so severely that the local jail rejected his admission until he received medical aid. *See* ECF 1 at ¶¶ 2, 5, 55, 59, 60. These officers muted or switched off their body cameras during portions of the beating. *Id.* at ¶ 57. Mr. Lee filed this lawsuit on August 29, 2023. *See* ECF 1. The Mayor shut down the torture warehouse that same day, after a local television station reported about the facility. *Id.* at ¶¶ 5, 178.

The full horror of the torture warehouse is still coming to light. The physical layout, contents, and conditions of the torture warehouse—information critical to this case—remains a secret. Did BRPD handcuff citizens to fixtures during the assaults? Did they post information about BRPD policies and procedures (or anything else) inside the facility? Did BRPD install or operate security cameras, computers, and telephones inside the torture warehouse? Were there desks,

---

[6] *See* Ramon Antonio Vargas, *Louisiana Polic Accused of 'Unconsionable' Abuse in "Brave Cave"* (Sept. 23, 2023), https://www.theguardian.com/us-news/2023/sep/23/louisiana-police-brave-cave-baton-rouge-warehouse-torture.

chairs, file cabinets, or other office equipment? Was there a seating area, restrooms, or even a private area for conducting strip searches? What were the lighting conditions and temperature controls? How did BRPD organize, store, and process paperwork inside the warehouse?

The answers to these critical questions are unknown, and largely unknowable without an immediate inspection of the premises. Publicly, Defendants have stated that cameras were placed throughout the facility, but they have denied that any footage exists of Jeremy Lee from the night Jeremy Lee was beaten there. ECF 1 at ¶ 58. As stated, the BRPD officers who abused Plaintiff inside the warehouse turned off their body-worn cameras. *Id.* at ¶ 57. Under these circumstances, expedited discovery is necessary to preserve evidence of violence, torture, sexual assault, and other illegal activity that occurred inside BRPD's torture warehouse.

**B. The Parish Attorney's Office has refused to preserve critical evidence**

Plaintiff's counsel has conferred with the East Baton Rouge Parish Attorney's office regarding this motion, but the attorneys for BRPD and the City/Parish have repeatedly **refused** to confer regarding spoilation. *See* **Exhibit A** (anti-spoliation letter); **Exhibit B** (correspondence); **Exhibit C** (correspondence). The Parish Attorney has denied Plaintiff's reasonable requests.[7]

According to the Parish Attorney's office, "[w]e cannot voluntarily consent to access the structure for two reasons: (1) avoidance of any impediment or disruption to the ongoing federal and criminal investigations, and (2) avoidance of improper civil procedure." **Exhibit B** (correspondence). There is no merit to either claim, particularly considering the exigent circumstances present here.

---

[7] *See* Exhibits B and C. The Parish Attorney's Office has stated "we have instructed the police department and the officers to preserve all such things hard-copy, electronic, or otherwise so as not to lose them in their natural and current conditions," *see* Exhibit B (correspondence), but the recent arrest of Defendant's father for destroying video evidence raises important questions about BRPD's willingness to abide by this advice.

4

First, Plaintiff's requested inspection of BRPD's torture warehouse does not risk any "impediment or disruption" to any ongoing federal or criminal investigation (which, it is worth noting, is being conducted at least largely by the defendants themselves). And because the torture warehouse is apparently no longer in use, the inspection will pose no burden to BRPD or any other defendants. In any event, Plaintiff will agree to invite the Federal Bureau of Investigations and the U.S. Department of Justice to attend the inspection (and, of course, BRPD itself), and to produce to those agencies copies of the photographs and videos recorded during the inspection.

Second, there is no "improper civil procedure" contemplated here. As the Parish Attorney apparently recognizes, federal district courts inherently have the power to issue orders to preserve evidence and order expedited discovery. *See* **Exhibit B** (citing *AVO Multi-Amp Services Corp. v. Technical Diagnostics Services, Inc.*, No. 3:97-CV-3168-P, 1998 WL 25568, at *1 (S.D. Tex. Jan. 14, 1998); Fed. R. Civ. P. 26(d)(1)). And, as explained below, the facts here—a torture warehouse, operated by and in the custody of Defendants, who claim no security footage exists—clearly entitle Plaintiff to conduct limited discovery now, before the evidence vanishes.

## LAW AND ARGUMENT

**A. Plaintiff is Entitled to a Preservation Order.**

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). A motion to preserve evidence is the procedural vehicle by which to obtain an order "to preserve data that would otherwise vanish." *Deggs v. Fives Bronx, Inc.*, 2020 U.S. Dist. LEXIS 101955, at **4-6 (M.D. La. June 10, 2020) (citing *Tellis v. LeBlanc*, No. 18-0541, 2018 U.S. Dist. LEXIS 195633, at *2 (W.D. La. Nov. 14, 2018)).

As stated, courts inherently have the power to issue orders to preserve evidence. *See Conrod v. Young*, No. 06-1005, 2006 U.S. Dist. LEXIS 79476, at \*\*3-4 (W.D. La. Oct. 18, 2006) ("The court is empowered to fashion appropriate, equitable relief. In fact 'courts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation.'") (citing *Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133, 135 (Fed. Cl. Mar. 19, 2004)).

The party seeking a preservation order must "demonstrate that it is necessary and not unduly burdensome." *Puebelo of Laguna*, 60 Fed. Cl. at 138. First, the movant "must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Id*. (citing *In re Potash*, 1994 U.S. Dist. LEXIS 20836, at \*8 (D. Minn. Dec. 5, 1994)). Then, the movant must demonstrate that "the particular steps to be adopted will be effective but not overbroad." *Id*. That standard is met here based largely on Defendants' own public statements. But even without such statements, the combination of Defendants' refusal to confer regarding spoilation and today's arrest of Defendant Troy Lawrence Jr.'s father and other Street Crimes Unit members for destroying evidnece suffices.

Here, because Defendants have refused to meet regarding spoilation, *see* Exhibit C, or to respond to written anti-spoilation requests in a way that meaningfully ensures the preservation of evidnece, *see* Exhibit B, Plaintiff seek a narrowly-tailored Order requiring Defendants to immediately preserve any and all existing evidence of, or related to, the facility known as the "BRAVE Cave," including maintaining all structures and fixtures in their current states. Defendants must not, for instance, paint, landscape, organize, clean, change, or alter the facility in any way. There is a substantial likelihood of irreparable harm to Plaintiff absent a preservation

order, since critical evidence related to the facility's physical plant is likely to be lost or destroyed. At the same time, a preservation order places no burden on Defendants, the public, or taxpayers.

### B. Plaintiff is entitled to an immediate inspection of the BRPD torture warehouse.

Pursuant to Federal Rule of Civil Procedure 34(a)(2), Plaintiff requests that his attorneys and employees or contractors of their attorneys be allowed to enter onto and inspect the interior and exterior of the "BRAVE Cave" for the purposes of inspecting, measuring, surveying, photographing, videotaping, testing, or sampling that property. In addition to inspecting all open spaces in the facility, Plaintiff seeks to inspect the interior and contents of any and all storage spaces, closets, cabinets, drawers, boxes, containers, or any other space on the premisis. The purpose of this inspection is to prevent the spoilation of evidence. Plaintiff may seek an additional inspection later in this litigation to permit expert witnesses to inspect the property.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order requiring Defendants to: (a) immediately preserve all existing evidence of, or related to, the facility known as the "Brave Cave," including maintaining all structures and fixtures in their current states; and (b) immediately allow Plaintiff's counsel to enter the premises to conduct an inspection of the entire facility.

Respectfully submitted this 28th day of September, 2023,

/s/ Ryan K. Thompson
Ryan K. Thompson, LA Bar #38957
TRIAL ATTORNEY
660 Richland Ave
Baton Rouge, LA 70806
T: (323)271-8032
E: RKTsocialjustice@gmail.com

/

/s/ Thomas Frampton
Thomas Frampton, LA Bar # 35775
580 Massie Road
Charlottesville, VA 22903
T: (202( 352-8341
E: tframpton@law.virginia.edu

Jessica F. Hawkins, LA Bar #38263
P.O. Box 5072
Baton Rouge, LA 70802
T: (915)217-9192
E: jessicahawkins0421@gmail.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system. I have also electronically mailed a copy of the above motion and all exhibits to the following counsel:

Michael Schillage
Special Assistant Parish Attorney
Litigation Division
Office of the East Baton Rouge Parish Attorney
Email: mschillage@brla.gov

Anderson Dotson
Parish Attorney
Office of the East Baton Rouge Parish Attorney
Email: adotson@brla.gov

This 28th day of September, 2023

/s/ Thomas Frampton
Thomas Frampton, LA Bar # 35775
580 Massie Road
Charlottesville, VA 22903
T: (202( 352-8341
E: tframpton@law.virginia.edu

8