UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JEREMY LEE**                                                                  **CIVIL ACTION**

**VERSUS**                                                                        **NO. 23-1229-SDD-SDJ**

**LAWRENCE, ET AL.**

## ORDER

Before the Court is Defendants' Motion for Protective Order (R. Doc. 68). Plaintiff opposes the Motion (R. Doc. 69).

### I.  BACKGROUND

Plaintiff originated this action against the Baton Rouge Police Department and individual officers on August 29, 2023, alleging abuse by BRPD at the facility known colloquially as the "Brave Cave". (R. Doc. 1). On September 28, 2023, Plaintiff moved for immediate inspection of the facility. (R. Doc. 6). The Court declined to issue such an order, as some defendants had not yet made an appearance, but did order that the facility be preserved until an inspection could be held. (R. Doc. 9). After appearances had been made, Plaintiff renewed his motion for inspection on November 28, 2023. (R. Doc. 27). On February 27, 2024, a hearing was held before Magistrate Judge Scott Johnson on several pending motions, including the motion for inspection. (R. Doc. 62). At the hearing, the Court granted the Motion for Inspection in part and set a follow-up conference to discuss particulars of the inspection, allowing the parties time to consult with each other and with parties in related cases.[1] (R. Doc. 62). At the follow-up conference on March 6,

---

[1] Several other cases in Middle District center around the Brave Cave, though the cases are not consolidated. In an attempt to minimize the burden of discovery, the parties here attempted to include in this inspection as many parties

2024, the parties agreed that the inspection would happen on March 22, 2024; they discussed parameters for the inspection, including a potential protective order governing the inspection and the fruits thereof. (R. Doc. 67). Given the short timeline, the Court ordered an expedited briefing schedule on any proposed protective orders. (R. Doc. 67). Accordingly, Defendants filed this Motion for Protective Order on March 13, 2024 (R. Doc. 68), and Plaintiffs swiftly responded in opposition on the same day. (R. Doc. 69).

## II.    POSITIONS OF THE PARTIES

Defendants' Motion requests that the Court issue an order as follows:

1. Specifying a date and time that the inspection of the facility will be held.

2. Ordering that only specified persons be permitted to inspect the facility.

3. Ordering that any person who photographs or makes video recordings of the property or any designated object or operation on it shall produce all such photographs and video recordings to all parties to this proceeding at the same time that such party makes its initial disclosures pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure.

4. Ordering that no person participating in the inspection of the facility shall, without obtaining the consent of all parties or an *Order* of this Court permitting disclosure, disclose any photograph and/or video recording of the facility that depicts any person participating in the inspection of the facility or includes any narration by any person participating in the inspection of the facility to any person other than counsel of record, the lawyers associated with counsel of record, the non-lawyer employees of counsel of record, and experts retained for this matter.

5. Ordering that nothing in the Court's *Order* shall be construed as a limitation on the use of admissible evidence at trial, subject to such confidentiality provisions as may be ordered by the Court.

---

as possible from all related cases. This order in no way prevents future inspections of the Brave Cave by parties who will not have had the opportunity or did not agree to participate in this inspection, nor does this order preclude orders of inspection in any other action.

(R. Doc. 68 at 1-2). Defendants aver that the parties were able to agree about some of the particulars of the inspection, but that they were unable to agree on point #4, regarding the use of photos and videos taken on site. (R. Doc. 68-1 at 3-4, n.4).

In their Memorandum in Support, Defendants first introduce media coverage of the Brave Cave and what Defendants perceive as a "click-worthy… false narrative" perpetuated by media and "fostered by comments of the attorneys who are representing the alleged 'victims' through one-sided, and often misleading, mistaken, and false information". (R. Doc. 68-1 at 1-2). Defendants say they are concerned that Plaintiff will use photographs and video from the inspection to "further feed the media frenzy that they have… been instrumental in creating". (R. Doc. 68-1 at 2). Supporting their position on media coverage, Defendants claim that an online search for the terms "Baton Rouge" and "Brave Cave" together return over 300,000 search results. (R. Doc. 68-1 at 4). Defendants claim without substantiation that most of these results are directly due to Plaintiff's counsel disseminating information. (R. Doc. 68-1 at 4). The Memorandum contains several examples of online news coverage, including a press conference held by Plaintiff's counsel and pictures of the exterior of the Brave Cave "courtesy Attorney Thomas Frampton". (R. Doc. 68-1 at 4-8).

Defendants argue that the existing media coverage demonstrates the need to proactively protect Defendants from dissemination of information that would "further influence the decision making process of persons called to serve on any potential jury". (R. Doc. 68-1 at 12). They argue that the public does not traditionally have a right of access to discovery materials that are not made part of court filings, and that the Court should prohibit the dissemination of photos and videos taken at the Brave Cave in order to prevent a "trial by newspaper". (R. Doc. 68-1 at 10).

In opposition, Plaintiff notes that Defendants have not cited Rule 26(c) requirements for issuance of a protective order nor attempted to demonstrate their argument through the "good cause" framework set out by that rule. (R. Doc. 69 at 1). Plaintiff also notes that Defendants have failed to include with their motion a certification that the parties have conferred in good faith in an effort to avoid court intervention, as required by Rule 26(c). (R. Doc. 69 at 1). Finally, Plaintiff argues that Defendants have not met their burden to show good cause for entry of a protective order, as they have not demonstrated a clear and specific injury that will result in absence of such an order.

### III.  LEGAL STANDARD

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004) (citation omitted). The parties seeking the protective order "must articulate the injury with specificity," and "[b]road allegations of harm, unsubstantiated by specific examples do not support a showing of good cause." *Id.* (internal quotations omitted).

### IV.  DISCUSSION

Ordinarily, the undersigned would deny without prejudice any motion for protective order that does not contain both a certification of good faith conference *and* an attempt to meet the good

cause standard. The instant Motion lacks both. However, given the extremely abbreviated timeline—two weeks between the first mention of a protective order and the inspection itself—and for the sake of judicial economy, the Court will assume arguendo that Defendants intended to write their Motion pursuant to Rule 26(c) and that the attached e-mail discussion among the parties' counsel was an attempt to demonstrate that the parties conferred before filing their Motion. (R. Doc. 68-4, e-mails among counsel).

In an apparent attempt to articulate a potential injury, Defendants claim that Plaintiffs "have had no problem… in widely disseminating images, and appearing in video, that concerns this… litigation." Defendants do, indeed, provide several news articles about the Brave Cave and other investigations of the BRPD, but Defendants point to nothing in the content of press coverage that is not otherwise public record. Defendants point to images provided to news outlets by Plaintiff's counsel, but those images either come directly from court filings (e.g., 23-cv-1313, ECF No. 1 at 6 and 23-1508, ECF No. 1 at 7—photos of the exterior of the Brave Cave; 23-cv-1129, ECF No. 1 at 30, an image of police body cam footage of Plaintiff at the Brave Cave) or are publicly available elsewhere.[2] Finally, a press conference given by Plaintiff's counsel regarding litigation does not amount to the kind of publicity campaign implied by Defendants. The Court notes that a "one-sided narrative" is entirely expected in litigation, and the parties have no obligation to present opposition to their own position. Defendants' examples of an ongoing "media frenzy" are not illustrative of a specific harm that could be remedied by the proposed protective order, but they actually show that a protective order limiting dissemination of photos and videos *from the inspection* would not remedy the purported harm of generalized media prejudice.

---

[2] One can simply search Google Maps for "Brave Cave" and find the exact location of the facility and even more detailed images of the exterior of the building than were submitted to the Court.

In addition to the generalized fear of media-induced jury bias, Defendants claim they can imagine several ways in which Plaintiffs may use photos and videos taken during the site inspection to "further taint the jury venire". (R. Doc. 68-1 at 9). They cite two examples of ways Plaintiff might use photos and videos from the site inspection: a photograph of defense counsel presented with a derogatory caption, and a video of Plaintiff narrating his version of events that he alleges happened at the facility. (R. Doc. 68-1 at 9). The first imagined scenario is pure speculation. Defendants have offered no evidence that Plaintiff or his counsel have or would disseminate ad hominem attacks on defense counsel. Furthermore, Defendants have not articulated how either imagined scenario is specific to the site inspection of the Brave Cave, which is the only discovery at issue in the proposed protective order.

Not only have Defendants not shown that media coverage poses an imminent and serious harm, but they have also failed to propose an order that is tailored to remedy that harm.[3] Given the high public interest in the operations of a governmental body and specifically the interest in the allegations of abuse by the BRPD, there may come a time that the parties wish to seek the Court's intervention to protect from jury bias. If such a need arises, the Court will take extreme care in weighing the rights of the parties against the public's interest in information about the police department. Should they seek Court intervention on this issue, both parties shall support their arguments with precedent and the legal standard(s) for addressing such bias, and any requested Court action should actually remedy the harm.[4] The undersigned has afforded lenience regarding

---

[3] That is, photos of defense counsel and videos of a plaintiff explaining the details of his complaint could be taken in any case, at any time, anywhere. Defendants have not articulated why this site inspection poses a particular harm.

[4] Defendants' Memorandum cites dicta from numerous cases about the relationship between discovery, the First Amendment, and the effect of extrajudicial communications on a fair trial (R. Doc. 68-1 at 8-11), but this list of quotes opines on the important of rights in general rather than a framework for weighing those rights or application to the specific facts of this case.

the lack of legal standard in the instant motion in order to maintain the current inspection schedule and avoid undue hardship, but such lenience will not become standard practice.

Finally, the Motion for Protective Order (R. Doc. 68) and Opposition (R. Doc. 69) do not address the other provisions of the proposed protective order. While the parties seem largely to have disagreed only on the provision regarding dissemination of photos and videos taken at the inspection, the Court can only glean as much from the limited e-mail correspondence provided by Defendants. (R. Doc. 68-4). Plaintiff indicates in his Opposition that, as a direct result of the same e-mail correspondence, he would not agree to any protective order governing the site inspection. (R. Doc. 69 at 2, n.1). Defendants, as moving party, have not attempted to meet their burden to show good cause for entry of a protective order with regards to any provisions of the proposed order.

## V.    CONCLUSION

Defendants have not met their burden of showing good cause for entry of the proposed protective order, but in light of the already contentious nature of this nascent litigation, the Court sees fit to grant some of the requested relief in order to ensure a smooth inspection. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Protective Order (R. Doc. 68) is **GRANTED in part and DENIED in part**, as follows:

**IT IS ORDERED** that proposed measure #1 is **granted as modified**: the inspection of the Brave Cave facility will take place on March 22, 2024, at 10:00a.m. The inspection shall last no longer than five hours.

**IT IS FURTHER ORDERED** that proposed measure #2 is **granted in full**: the following people will be permitted to inspect the facility:[5]

*For Plaintiff*:   Thomas Frampton, Ryan Thompson, Jessica Hawkins, Angela Allen-Bell, Kevin Griffin, Ternell Brown, Jeremy Lee, Skylar Dean, Yolanda Haynes-Seiber, Lindsay Garcia, Rayvon Addison, Dolores Guadalupe Cowie, Malia Takei, Shelby Wolfe, Ben Keller, Catherine Haddad, Sam Meyer, Jared Tay, Sarah Gebrengus;

*For Defendants*:   Brian F. Blackwell, B. Kyle Kershaw, Chase Tettleton, Michael P. Schillage, Mike Walsh, Grant Willis, Gillian Griffin, Jennifer Esneault.

**IT IS FURTHER ORDERED** that proposed measure #3 is **denied in full**. The Court declines to order any specific production of discovered materials and expects the parties to comport with the Federal Rules of Civil Procedure and the Local Rules of this District.

**IT IS FURTHER ORDERED** that proposed measure #4 is **granted as modified**: no person participating in the inspection of the facility shall disseminate any photo or video recording taken at the inspection site that portrays another person without the consent ***of that person***,[6] except that such photos and videos may be freely disseminated to counsel of record, lawyers associated with counsel of record, non-lawyer employees of counsel of record, experts retained in this matter, and Court personnel. The parties are instructed that they shall not interfere with any party's evidence-gathering and will take reasonable steps to allow all parties present to gather the evidence they seek, unimpeded.

---

[5] The parties listed here may include plaintiffs or defendants of other related cases before the Middle District, as mentioned above. (*Supra*, n.1).

[6] The Court will not at this time set a strict standard for the incidental capture of another's voice on video recordings, but urges reasonable judgment regarding voice identification and sound editing.

**IT IS FURTHER ORDERED** that proposed measure #5 is **granted in full**. Nothing in this Order shall be construed as a limitation on the use of admissible evidence at trial, subject to such confidentiality provisions as may be ordered by the Court.

Signed in Baton Rouge, Louisiana, on March 20, 2024.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**