UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEREMY LEE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1229-SDD-SDJ** |
| **TROY LAWRENCE, JR., ET AL** | |

## ORDER

Before the Court is Plaintiff's Second Motion to Amend Complaint (R. Doc. 111), in which Plaintiff proposes adding both a plaintiff and defendants to this case. All existing Defendants oppose this Motion (R. Doc. 111 at 1), and Defendants City/Parish and Matthew Wallace have filed a joint opposition (R. Doc. 114). Plaintiff has filed a Reply in support of his Motion. (R. Doc. 122).

**I.  Background**

This action was initiated in this Court on August 29, 2023. (R. Doc. 1). Plaintiff Lee's Complaint names as Defendants police officers Troy Lawrence, Jr., Joseph Carboni, and Matthew Wallace; the Baton Rouge Police Department; BRPD Chief Murphy Paul; and the East Baton Rouge City/Parish. (R. Doc. 1 at 3). Lee alleges that on January 9, 2023, he was arrested by Wallace and Lawrence at a house near 5400 Cadillac Street in Baton Rouge. (R. Doc. 1 at 3). Lee further alleges that the officers used unnecessary force, stripped his clothing, threatened to beat him, repeatedly turned off and muted their body-worn cameras, and failed to tell Lee why he was being detained. (R. Doc. 1 at 3-6). A crowd formed in the neighborhood and the parking lot of a nearby grocery store, and tensions rose between Lawrence and neighborhood crowd. (R. Doc. 1 at 7). Lee was then transported to the BRPD facility knowns as the Brave Cave and beaten by

Lawrence, Wallace, and Carboni, sustaining a degree of injuries such that the local jail refused to hold Lee until he had received medical attention. (R. Doc. 1 at 8-9).

Based on the above allegations,[1] Lee's claims are:

| | |
|---|---|
| **Claim 1:** | Fourth Amendment **excessive force** as to Lawrence, Wallace, and Carboni; |
| **Claim 2:** | Fourth Amendment **unreasonable search** as to Lawrence and Wallace; |
| **Claim 3:** | Fourth Amendment **unreasonable seizure** as to Lawrence, Wallace, and Carboni; |
| **Claim 4:** | First Amendment **retaliation** as to Lawrence and Wallace; |
| **Claim 5:** | *Monell* **liability** for counts 1-4 as to BRPD, the City/Parish, and Paul; |
| **Claim 6:** | **failure to intervene** as to Wallace, Carboni, and Lawrence; |
| **Claim 7:** | **assault** as to Lawrence, Wallace, and Carboni; |
| **Claim 8:** | **battery** as to Lawrence, Wallace, and Carboni; |
| **Claim 9:** | **false imprisonment** as to Lawrence, Wallace, and Carboni; |
| **Claim 10:** | **defamation** as to Lawrence and Wallace; |
| **Claim 11:** | **negligence** as to Lawrence, Wallace, Carboni, and Paul; and |
| **Claim 12:** | **respondeat superior** as to BRPD and the City/Parish. |

(R. Doc. 1 at 21-26).

## II. Proposed Amended Complaint

The proposed Amended Complaint, filed on October 3, 2024, asserts the same facts and claims as to Lee, and adds facts and claims as to proposed plaintiff T'Niyah Bass. (R. Doc. 111-3). The amended complaint further adds as proposed defendants BRPD officers Tafari Beard,

---

[1] Summarized and simplified here.

Steven Nevels, John Does 1-3,[2] and Jane Doe. (R. Doc. 111-3 at 3). Bass alleges that on January 9, 2023, she and two other girls were sitting in the front of a house near 5400 Cadillac Street eating crawfish, when Wallace told them to move away from the house and to stand near a BRPD vehicle. (R. Doc. 111-3 at 4). Beard arrived, spoke with the three girls, and ordered Nevels to place the girls in his vehicle. (R. Doc. 111-3 at 4). Bass, 16 years old and 7 months pregnant at the time, told the officers that she was pregnant and requested to use the restroom; Beard said he would try to find a female officer to accompany her. (R. Doc. 111-3 at 4). John Doe Officer 1 transported Bass to the precinct where they were met by Jane Doe Officer. (R. Doc. 111-3 at 5). John Doe 1 put leg shackles on the barefoot Bass, and Jane Doe performed a pat-down before escorting Bass to the restroom, where she was made to use the restroom with the door open. (R. Doc. 111-3 at 5). Bass was brought back to the initial scene, where she rejoined the other teenagers in the back of Beard's police vehicle. (R. Doc. 111-3 at 6). After three hours in the back of the car and at least one denied request to use the restroom, Beard took the teenagers to the Brave Cave for interrogation, allegedly at the behest of Wallace. (R. Doc. 111-3 at 6). There, Bass was interrogated without parent or counsel present, subjected to an "invasive and sexually humiliating" strip and cavity search by John Doe Officer 2, and eventually released without charge after four hours of detention. (R. Doc. 111-3 at 7-8, 42).

Based on these allegations, Bass's claims are:[3]

**Claim 2:** Fourth Amendment **unreasonable search** as to Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe;

**Claim 3:** Fourth Amendment **unreasonable seizure** as to Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe;

---

[2] Only two John Doe defendants are explicitly cited in the proposed amended complaint.
[3] Bass's claims are listed here in full. For ease of comparison, claims are numbered to align with the Lee's claims above; the numbers are nonsequential, indicating that some claims were brought by Lee but not by Bass, and vice versa.

|   |   |
|---|---|
| **Claim 5:** | ***Monell* liability** as to BRPD, the City/Parish, and Paul; |
| **Claim 6:** | **failure to intervene** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe; |
| **Claim 7:** | **assault** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe; |
| **Claim 8:** | **battery** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe; |
| **Claim 13:** | **abuse of a minor** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe; |
| **Claim 14:** | **sexual assault** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe; and |
| **Claim 15:** | **intentional infliction of emotional distress** as to Lawrence, Carboni, Wallace, Beard, Nevels, John Doe 1, John Doe 2, and Jane Doe. |

### III. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires". Fed. R. Civ. P. 15(a). Determining whether justice requires permission to amend rests within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 122 (5th Cir.1980). Factors a court might consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Foman* at 182.

However, "[w]hen a court is faced with a motion to amend seeking to join additional plaintiffs, the court must consider not only the amendment provisions of Rule 15(a), but also the more specific joinder provisions of Rule 20(a)." *Young v. Braum's, Inc.*, 2020 WL 11626227, at *5 (E.D. Tex. Nov. 19, 2020) (citing cases) (internal quotations omitted). "Courts have described

Rule 20 as creating a two-prong test, allowing joinder of [parties] when (1) their claims arise out of the 'transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted). "When applying the two-prong test, the Court considers whether there is a logical relationship between the claims and whether there is any overlapping proof or legal question." *Peters v. Singh*, 2017 WL 5128750, at *2 (M.D. La. Nov. 6, 2017) (citing *Weber v. Lockheed Martin Corp.*, 2001 WL 274518, at *1 (E.D. La. Mar. 20, 2001)).

Even if the two-prong test is satisfied, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness" and "when different witnesses and documentary proof would be required for plaintiff['s] claims." *Acevedo*, 600 F.3d at 521-22. And so, this Court has adopted the approach of the Eastern District by applying a five-factor test to determine whether joinder is appropriate: (1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims.[4] *See, e.g., Rowe v. Primerica Life Ins. Co.*, 2020 WL 5835150, at *2 (M.D. La. Sept. 30, 2020).

---

[4] In many cases, this is seen through the lens of severance rather than joinder, but the analysis is the same. *See, e.g., Louisiana State Conf. of Nat'l Ass'n for Advancement of Colored People v. Louisiana*, 490 F. Supp. 3d 982, 1032–33 (M.D. La. 2020), aff'd sub nom. *Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021) ("The Fifth Circuit has explained that, since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance.") (internal quotations and citations removed).

## IV.   Arguments of the Parties

Plaintiff brings this Motion for Leave to Amend to add a plaintiff and defendants "pursuant to Rules 15, 19, and 20".[5] (R. Doc. 111). Stating the legal standard to be applied, Plaintiff merely lists verbatim recitations of the Louisiana Civil Code, Louisiana Children's Code, and Federal Rules of Civil Procedure 19 and 20. (R. Doc. 111-1 at 2). Plaintiff then lists the claims from the original Complaint and asserts that Bass and Lee were both detained at the same house on the same day, and both taken to the Brave Cave where they were both subject to strip searches. (R. Doc. 111-1 at 3). Finally, Plaintiff makes the conclusory statements that Bass's claims "arise out of the same transaction, occurrence, or series of transactions or occurrences as alleged by Mr. Lee in the original complaint"; that "if Mr. Lee's complaint(s) are disposed of in Ms. Bass's absence she will lose her ability to protect her interest"; and that "if additional defendants are not added, the existing defendants would be forced to incur multiple obligations". (R. Doc. 111-1 at 3).

In opposition, Defendants City/Parish and Wallace first argue first that Bass's claims do not relate back to the original Complaint. (R. Doc. 114 at 4). Relying on Louisiana Supreme Court precedent, Defendants set forth a test for relation back and argue that: Bass's claims do not arise out of the same conduct, transaction, or occurrence as Lee's; none of the originally named Defendants would have reason to anticipate Bass's involvement in this litigation; Lee and Bass are not sufficiently related to justify joinder; and the addition of a new plaintiff and at least two defendants would significantly burden discovery.[6] (R. Doc. 114 at 4-5). Next, Defendants argue that neither party is indispensable to the complete litigation of the other's claims, and indeed that

---

[5] Federal Rules 19 and 20—Required Joinder and Permissive Joinder—are, by definition, mutually exclusive. They could each be argued in the alternative, but, as quoted below, Plaintiff pulls some language from both rules without a thorough analysis of joinder under either.

[6] Despite their references to the Federal Rules of Civil Procedure, Defendants rely on Louisiana state law regarding relation back of an amended complaint; this is neither the appropriate test to be used in federal court nor the relevant question in this amendment seeking joinder, which is more appropriately analyzed through the joinder rules.

presenting evidence for both Lee and Bass would confuse a trial jury. (R. Doc. 114 at 6). Finally, Defendants argue that Bass's claims are time-barred, and so the amendment should be denied as futile. (R. Doc. 114 at 6-10).

Plaintiff argues in his Reply that the applicable law is Federal Rule 15(a), which allows that amendment should be freely granted when justice so requires. (R. Doc. 122 at 2; Fed. R. Civ. P. 15(a)(2)). Here, Plaintiff asserts that Defendants have not shown a substantial reason that the Court should deny amendment. (R. Doc. 122 at 2). Plaintiff argues that Defendants' assertion of a burden on discovery is disingenuous because the instant Motion to Amend is well within the Court's deadline, Defendants themselves have delayed discovery, and because one Defendant has already been deposed as to Bass's claims while others will not need re-deposition. (R. Doc. 122 at 3). As to relation back, Plaintiff argues a "logical relation" test—that there is relation back when "there is a common right to relief that arose out of a common nucleus of operative facts or law". (R. Doc. 122 at 4). Here, Plaintiff argues, Lee and Bass both make "claims of excessive force, battery, assault, unreasonable search, and unreasonable seizure"; both were initially contacted by Wallace on his arrival to the house where both were present; both were detained, arrested, strip searched, and interrogated at the same location; and all of this was "at the behest of lead detective Wallace". (R. Doc. 122 at 4-5). Finally, Plaintiff argues that the question of prescription of claims is not before the Court; nevertheless, he submits arguments against prescription. (R. Doc. 122 at 5-8).

**V.     Discussion**

The addition of Bass as plaintiff and of defendants related to her claims is only appropriate if the five-prong test for joinder under Rule 20 is satisfied. Only if that test is satisfied will the Court turn to the general requirements for amendment and relation back under Rule 15.

First, and most importantly, the claims alleged by Lee and Bass must arise out of the same transaction or occurrence. Notably, the proposed Amended Complaint does not set forth a single set of facts but instead sets out "Facts Related to Bass" (R. Doc. 111-3 at 4) and "Facts Related to Lee" (R. Doc. 111-3 at 8). The same bifurcation is employed in the enumeration of claims. (R. Doc. 111-3 at 33-42). The only combined claims are Claim 5—Monell Liability (R. Doc. 111-3 at 38) and Claim 12—respondeat superior (R. Doc. 111-3 at 43). That such a separation of the two plaintiffs is necessary suggests that there may be different transactions or occurrences at play.

While both Lee and Bass were detained "in the area of 5400 Cadillac Street" on January 9, 2023, the proposed amended complaint does not suggest that Lee and Bass have any connection to each other, that the detentions were part of the same operation, or even that they happened around the same time of day. Lee alleges he was arrested, interrogated, assaulted, and stripped of his clothes, and transported by Wallace and Lawrence; once at the Brave Cave, Wallace, Lawrence, and Carboni beat and interrogated Lee. (R. Doc. 111-3 at 8-13). Bass alleges that Wallace "made contact" with her, ordering her to stand near a BRPD vehicle, and that Beard ordered Nevels to put Bass and two other girls into Beard's car; when transported to use the restroom, Bass encountered John Doe 1 and Jane Doe, who shackled her legs and made her use the restroom with the door open; she remained in Beard's vehicle until "at the behest of [] Wallace" she was transported to the Brave Cave, where Wallace, Carboni, Beard, Nevel, and other unknown officers failed to activate their body worn cameras; and Bass was subjected to an invasive strip search by an unknown white male officer. (R. Doc. 111-3 at 4-7).

Although Bass's claims are nominally asserted as to the proposed defendants and Wallace, Lawrence, and Carboni, Bass's facts do not allege any involvement by Lawrence whatsoever and only allege Carboni's presence at the Brave Cave. (R. Doc 111-3 at 7 ¶ 32). The only truly shared

individual Defendant is Wallace, but while he was actively involved in the facts as to Lee, the only allegations related to Bass are that Wallace told Bass where to stand, directed officers to transport Bass to the precinct and to the Brave Cave to be interrogated, and was present at the Brave Cave. (R. Doc. 111-3 at 4-7, ¶¶ 16, 30, and 32). Wallace was an active arresting officer for Lee, but Lee makes no allegation that Wallace was acting in a supervisory capacity at the time; Bass, on the other hand, alleges only supervisory actions as to Wallace. A shared officer, date, and location are technically a logical relation, but Lee's and Bass's claims are substantially unrelated—Lee has no claims against the proposed additional defendants, and Bass has only stated nominal facts regarding the existing individual Defendants. Lee and Bass do share claims against BRPD and the City/Parish, but those claims arise out of the disparate fact patterns illustrated above.

Even if we decided that these claims arise out of the same transaction or occurrence, there remain four other requirements for joinder. The second factor is whether the claims present common questions of law or fact. Lee argues that he and Bass have both raised claims of excessive force, battery, assault, and unreasonable search and seizure. (R. Doc. 122 at 4). These claims, however, are wholly separate, Lee and Bass bringing them against two discrete sets of defendants, as illustrated above. Merely bringing claims under the same legal theory cannot constitute a common question of law, else any and every person who has been the victim of any assault could join this litigation. Here, there is no *specific* question of law in common and, as illustrated above, only minimal questions of fact.

The last three factors are inter-related here: whether settlement or judicial economy would be promoted, whether joinder would cause prejudice, and whether different witnesses and documentary proof are required for separate claims. The answer here is clearly not in favor of joinder. This litigation was initiated on August 29, 2023, and the instant Motion to Amend was

filed over a year later. Though this Motion was brought within the deadline to do so, and though the discovery period was still open at the time of filing, the addition of a new plaintiff and several new defendants with little to no factual overlap with the original Plaintiff would essentially restart litigation. One can easily imagine that an amended complaint that is, on its face, bifurcated between the two plaintiffs would lead to a trial that is similarly bifurcated. Plaintiff argues that there would be no burden on discovery because no new defense needs to be prepared and both Wallace and the City/Parish need not be re-deposed—but this does not take into account the up to five additional defendants,[7] the potential for additional counsel who have not participated in the previous depositions, depositions and other discovery regarding the new parties, etc. Plaintiff claims discovery is not necessary "because the facts as to Bass arose out of the same transaction and occurrence as Lee" (R. Doc. 122 at 3), but clearly the facts as to Bass, Beard, Nevels, and Officers Doe have not yet been subject to discovery. Put plainly, Bass and Lee were in different places with different people, and so different witnesses and documents will be necessary in discovery.

Given the procedural posture of this case, the minimal relationship between the claims at issue, and the burden the proposed amendment would put on existing parties and judicial economy, the Court does not find that permissive joinder per Rule 20 is appropriate in this case. And despite the bare assertion that Bass will lose her ability to protect her interest if she is not allowed into this case, there is nothing in the amended complaint to suggest that her claims *require* joinder under Rule 19. Because the Court will not permit this joinder, we need not address Rule 15 regarding amendment.

## VI.   Conclusion

For the reasons discussed above,

---

[7] Counting Doe defendants.

**IT IS ORDERED** that the Second Motion to Amend Complaint (R. Doc. 111) is **DENIED**. To the extent that any of Bass's claims were not prescribed at the time the Motion to Amend was filed and have since prescribed during the period of the Court's deliberation, that prescription period should be extended by 30 days from the issuance of this order to allow Bass to file her case separately.

Finally, Plaintiff has filed another Motion to Amend (R. Doc. 135) to add a plaintiff and at least one defendant.[8] In light of the current Order, this third Motion to Amend is now rendered moot, as it assumes the presence of Bass as plaintiff. And so,

**IT IS ORDERED** that the Third Motion to Amend (R. Doc. 135) is **DENIED without prejudice**. Should Plaintiff Lee decide that joinder of additional defendants is still appropriate, Plaintiff's counsel shall carefully review this Order, the authorities cited within, and Federal Rule of Civil Procedure 20(a) before re-filing.

Signed in Baton Rouge, Louisiana, on September 18, 2025.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] Styled as a motion to "Add a Plaintiff and Defendant", the motion seems to add no plaintiffs—considering the instant motion regarding Bass was pending at the time; it adds either *two or three* defendants—two according to the body of the motion itself (R. Doc. 135), but three according to the amended pleading (R. Doc. 135-3 at 1, 3). Plaintiff's counsel is urged to review drafts prior to filing and to be exceedingly clear in any future motions.