**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

JEREMY LEE

CIVIL ACTION

VERSUS

23-1229-SDD-SDJ

TROY LAWRENCE, JR., IN HIS
PERSONAL CAPACITY, MATTHEW
WALLACE, IN HIS PERSONAL
CAPACITY, JOSEPH CARBONI, IN
HIS PERSONAL CAPACITY, MURPHY
PAUL, IN HIS PERSONAL AND OFFICIAL
CAPACITY, BATON ROUGE POLICE
DEPARTMENT, CITY OF BATON ROUGE,
AND PARISH OF EAST BATON ROUGE

## RULING

This matter is before the Court on the Motions for Summary Judgment filed by Defendants Matthew Wallace ("Wallace"),[1] Joseph Carboni ("Carboni"),[2] Troy Lawrence, Jr. ("Lawrence"),[3] (collectively, "the officers"), and the City of Baton Rouge, Parish of East Baton Rouge (the "City/Parish")[4] (or collectively "Defendants"). Plaintiff Jeremy Lee ("Plaintiff" or "Lee") filed Oppositions to these motions.[5] All Defendants filed Replies.[6] For the following reasons, the Motions by Carboni and Wallace are GRANTED, and the Motions by Lawrence and the City/Parish are GRANTED in part and DENIED in part.

---

[1] Rec. Doc. 142.
[2] Rec. Doc. 143.
[3] Rec. Doc. 144.
[4] Rec. Doc. 150.
[5] Rec. Docs. 159, 154, 175, 174, respectively. The Court rejects Defendant Lawrence's contention that the Plaintiff's Oppositions were untimely. The Court discovered a filing deficiency and ordered Plaintiff to correct the filing errors *sua sponte*. The Court considered the filing deficiencies mere technical filing errors rather than blatant disregard of a filing deadline. The Court ordered that the deficiency be corrected within 48 hours, not enough time for the Plaintiff to craft oppositions out of whole cloth. Furthermore, the Defendants were not prejudiced because the Court continued the trial date and enlarged the time for Defendants to file Replies. The interests of justice were served by allowing the Plaintiff to correct the filing errors.
[6] Rec. Docs. 169, 167, 171, 180, 172, 185.

## I.    FACTUAL BACKGROUND[7]

The individual defendants in this matter are police officers who were employed by the Baton Rouge Police Department ("BRPD") on the date in question. This case arises from an altercation that began on January 9, 2023, when the officers executed a search warrant on a suspected drug house on Cadillac Street in Baton Rouge, Louisiana.[8] According to Defendants, the undisputed material facts are as follows.

Before the search of the Cadillac Street house, the Street Crimes Unit had been conducting surveillance on the residence for approximately one week and noticed conduct consistent with narcotics, gang, and illegal firearm activity.[9] At approximately 3:52 p.m., the officers arrived at house on Cadillac Street to investigate.[10] The officers noticed people standing around a vehicle parked in front of the residence with a switched license plate. Officers attempted to speak with these individuals, but several started running away.[11]

Not long before officers approached the residence, Lee arrived in a vehicle being driven by Deondre Tate who had stopped the vehicle in front of the residence and kept it running while they both went inside.[12] At this point, the officers approached the residence, and Wallace testified that he detected the distinct odor of marijuana around the home generally and specifically near the carport.[13] When Lee exited the front door of the residence, Wallace testified that the marijuana odor "even got louder."[14]

---

[7] In the interest of clarity, the Court notes that when citing deposition testimony, the Court cites the page number of the deposition rather than the ECF docket number.

[8] Rec. Doc. 142-4.

[9] Rec. Doc. 143-3, Wallace Depo, p. 121; Rec. Doc. 143-4; Rec. Doc. 143-5, p. 39.

[10] Rec. Doc. 150-6.

[11] Rec. Doc. 143-3, Wallace Depo, pp. 131-132; Rec. Doc. 143-4; Rec. Doc. 143-5, pp. 39-40.

[12] Rec. Doc. 143-6, Lee Depo, pp. 68-69.

[13] Rec. Doc. 142-3, Wallace Depo, p. 167.

[14] *Id.*

As Lee exited the residence, Wallace observed another person in the doorway armed with a firearm. When this armed individual saw Officer Wallace, he quickly retreated back into the house and shut the door.[15] Meanwhile, Officer Carboni, who was stationed at the rear of the residence, observed two individuals with firearms flee from a back window. Carboni gave chase and police apprehended both men.[16] Wallace testified that, considering the number of armed subjects attempting to flee the residence, he detained Lee for safety purposes.[17] Wallace further testified that, at this time, Lee was "just being detained" and was not arrested.[18] Although Carboni testified that he did not arrest anyone on January 9, 2023, Carboni was aware that after, a search warrant of the premises was executed, Lee was arrested.[19]

At 5:29 p.m, the officers obtained a "no-knock" warrant, signed by Judge Fred Crifasi of the 19th Judicial District Court. The BRPD Special Response Team executed the warrant and searched the residence.[20] The officers ultimately recovered various amounts of heroin, crack cocaine, methamphetamine, hydrocodone, marijuana, drug paraphernalia, and six semi-automatic weapons from in and around the residence.[21]

Two firearms, one of which was stolen, and over two ounces of marijuana were found in the vehicle Lee had exited shortly before officers' arrival.[22] Lee and others at the residence were arrested on various charges, including illegal carrying of weapons, drug

---

[15] Rec. Doc. 142-4, p. 39
[16] This individual was later identified as Seyveyon Moore; he possessed marijuana at the time he was detained. Rec. Doc. 143-7, Carboni Depo, pp. 93-94; 110-111.
[17] Rec. Doc. 142-3, Carboni Depo, pp. 124-125.
[18] *Id.* at p. 124:8.
[19] Rec. Doc. 143-7, Carboni Depo, pp. 94, 165-168.
[20] Rec. Doc. 143-4; Rec. Doc. 143-5, p. 40.
[21] Rec. Doc. 143-5, pp. 41-42.
[22] Rec. Doc. 143-6, Lee Depo, pp. 125-128; Rec. Doc. 143-5, pp. 40-42.

possession, and obstruction of justice by resisting arrest.[23]    After the contraband was seized pursuant to the search warrant, Lee was arrested and Mirandized by Wallace and then transported by Lawrence to the BRPD processing facility, a warehouse-style building colloquially known as the "Brave Cave."[24] Video footage shows that this processing facility included an administrative area, a holding cell, and a warehouse-type room where strip searches were conducted.[25] The holding cell was monitored by a video camera.[26] The room where the subject strip search and other events took place was not video monitored, and there is no officer body worn camera footage of the subject events that took place in the warehouse.

Upon arrival, Lawrence took Lee into the warehouse area of the facility to be strip searched,[27] while Wallace went to a separate office space to complete paperwork.[28] Wallace was not present in the warehouse room when Lawrence initiated or conducted the strip search.[29] Wallace heard "foot scuffling" and the sounds of a physical struggle coming from the warehouse room.[30] Lee testified that, while in the warehouse room, he was suddenly struck by Lawrence. As he attempted to run away from Lawrence, Lee fell backwards to the ground, and Lawrence allegedly kicked Lee in the ribs. Lee jumped up and ran to the back of the room.[31] Wallace entered the room and observed Lee "turning from the officers and fleeing towards an exit door that [Wallace] believe[d] was

---

[23] Rec. Doc. 143-5, pp. 5-21.
[24] Rec. Doc. 143-6, Lee Depo, pp. 129-130.
[25] Rec. Doc. 150-9 (Exhibit 8).
[26] *Id.*
[27] *Id.* at pp. 129-132.
[28] Rec. Doc. 142-3, Wallace Depo, pp. 181, 234.
[29] Rec. Doc. 142-6, Lee Depo, p. 137.
[30] Rec. Doc. 142-3, Wallace Depo, pp.231-233.
[31] Rec. Doc. 143-6, Lee Depo, pp. 134-140, 377-381.

unsecured."[32] Wallace issued a verbal command to move away from the exit door. In his deposition, Lee admitted that he did not initially comply with Wallace's commands that he move away from the exit door, stating "I wasn't complying … at first."[33]  Because Lee did not comply, Wallace executed a "leg sweep" which took Lee to the ground and allowed Wallace to gain control.[34] Lee estimated that ten seconds passed between Wallace's commands that he move and the leg sweep.[35] Once on the ground, Lee became compliant, and Wallace used no further force against Lee during this encounter.[36]

It is undisputed that Carboni never touched Lee during this entire encounter.[37] In fact, Lee testified that Carboni was not even present at the facility;[38] Carboni's testimony, however, acknowledges his presence during the incident.[39]  Lee also confirmed that, aside from the "leg sweep," Wallace used no other force against him.[40] Lee testified that his alleged injuries were not caused by the leg sweep; rather, he attributed his injuries to the alleged strikes and kicks by Lawrence.[41]

After the strip search, alleged force by Lawrence, and the leg sweep by Wallace, Lee was moved to a holding cell within the processing facility.  At approximately 8:30 pm, camera footage shows Lee having a cordial conversation with Officer Steven Nevels while Lee is in the holding cell.[42]  Defendants maintain Lee does not exhibit any pain or injury.[43]

---

[32] Rec. Doc. 142-3, Wallace Depo, p. 238.
[33] Rec. Doc. 142-6, Lee Depo, p. 384:20-22.
[34] *Id.* at p. 384:8.
[35] *Id.* at p. 384:18.
[36] *Id.* at p. 385:12; Rec. Doc. 142-3, Wallace Depo, pp. 246-247.
[37] Rec. Doc. 143-6, Lee Depo, pp. 369-373; Rec. Doc. 143-7, Carboni Depo, pp. 177-188.
[38] Rec. Doc. 143-6, Lee Depo, pp. 370-371.
[39] Rec. Doc. 143-7, Carboni Depo, pp. 177-188.
[40] Rec. Doc. 143-6, Lee Depo, p. 349; Rec. Doc. 142-6, p. 318.
[41] Rec. Doc. 142-6, Lee Depo., pp. 385, 318, 349.
[42] Rec. Doc. 150-9 (Exhibit 8, Nevels Body Camera Footage).
[43] *Id.*

A few hours later, at approximately 10:40 pm, Wallace questioned Lee, and Lee exhibited no outward signs, expressions, or direct verbal indicators of pain or injury.[44]

Lee challenges the facts and characterizations as presented by Defendants. Lee disputes the characterization of the residence as a "drug house" and the officers' operations as a "raid." Lee contends the officers approached the residence and detained individuals outside before the search warrant was signed and without obtaining judicial authorization.[45] Lee further contends that, while the search warrant application notes surveillance of the residence occurred, it does not establish a continuous week of surveillance, and critically, it does not establish any connection between alleged criminal activity and Lee.[46] Lee claims Wallace admitted that he had never seen Lee at the residence prior to January 9, 2023.[47]

As for Lee's detention, Lee maintains that he was detained at 3:53 p.m., over 90 minutes before the warrant was signed, and during his detention, he was handcuffed, pushed into the pavement of public street, and had his pants pulled down and underwear exposed by the officers without probable cause or reasonable suspicion.[48] Lee claims this constituted a strip search and violated BRPD General Order 281, which requires strip searches to be conducted in a private, enclosed setting.[49]

---

[44] *Id.* (Exhibit 9, Wallace Body Camera Footage).
[45] Rec. Doc. 143-3, Wallace Depo, pp. 131-132.
[46] *See* Rec. Doc. 143-4.
[47] Lee cites the deposition testimony of Lieutenant Lorenzo Coleman ("Coleman"), Captain of the Third District, BRPD to support this statement; however, Coleman did not testify to this statement. Coleman was asked by counsel, "Under the testimony of Officer Matthew Wallace, he stated that he had never seen Jeremy Lee at that house before. Are you aware of that?" Rec. Doc. 150-15, p. 244. Wallace responds, "No." *Id.* Lee does not cite Wallace's testimony.
[48] *See* Amended Complaint, Rec. Doc. 65, p. 5.
[49] Lee cites to Exhibit B, but no Exhibit B is attached to this memorandum.

Lee also contends he engaged in First Amendment-protected activity by criticizing the officers during the encounter at the residence and during transport to the facility. Lee made statements like "fuck the police," "hang up your vest," and threatened legal action against them as he was being detained, searched, and transported.[50]

Lee maintains that the officers lacked probable cause to detain and/or arrest him because he had no connection to the vehicle with a switched license plate, he had no connection to the individuals who fled when the police arrived, and he was not the driver nor did he have any ownership interest in Tate's car where the contraband was found.[51] Moreover, he contends that the odor of marijuana came from the residence, not Lee's person, and did not provide probable cause to detain or arrest him.[52]

Lee admits that Carboni did not arrest him on the evening of January 9, 2023, but maintains that this fact is immaterial to the claims he has asserted against Carboni, which include participating in an unconstitutional strip search and failure to intervene during an assault. Lee notes that Carboni admits to his presence during the strip search, and he testified that he could hear Lee "screaming" or "yelling" at the warehouse during the alleged assault.[53] Lee acknowledges Wallace was not present during his strip search in the warehouse; however, he maintains Wallace was in the next room and knew what was occurring.[54]

Lee testified that, following the strip search, and after he put his clothing back on, Lawrence asked him: "What's that shit you was talking about?" Then Lawrence charged

---

[50] Rec. Doc. 160, Coleman Depo, pp. 123-125.
[51] Rec. Doc. 150-15, Coleman Depo, pp. 245-46; Rec. Doc. 143-6, Lee Depo, pp. 68-69.
[52] Rec. Doc. 150-15, Coleman Depo, pp. 246-247.
[53] Rec. Doc. 143-7, Carboni Depo, pp. 177-188.
[54] Rec. Doc. 143-6, Lee Depo, pp. 132, 136-137.

at Lee and punched him in the left jaw, which caused Lee to fall backwards to the ground. When Lee attempted to move away from Lawrence, he tripped and fell on the uneven concrete floor. While on the ground, Lawrence kicked Lee twice in the ribs with steel-toe boots, causing him severe and immediate pain.[55]

Lee acknowledges that narcotics and firearms were found in and around the residence; however, he contends there are no facts to support that officers had an individualized suspicion that Lee was concealing contraband on his person that gave probable cause for a strip search. Lee notes that Lawrence admitted that nothing in the Incident Report indicated that Lee was concealing contraband on his person,[56] and Lt. Lorenzo Coleman ("Coleman") admitted that no contraband was found on Lee's person.[57]

Lee admits that he was arrested on various charges but also notes that all criminal charges brought against him were later dismissed.[58] Particularly, Lee states that he was not charged with carrying illegal weapons, and no illegal weapons were ever found on his person.[59] Lee argues the dismissal of the criminal charges underscores the lack of probable cause to arrest and strip search him.

Despite Carboni's characterization that Lawrence took Lee to the warehouse room to strip search him, Lee notes that the official incident report states that "Det. J. Carboni and Det. T. Lawrence took Jeremy Lee into the rear room to conduct a further search of his person."[60] Carboni admitted that he was present during Lee's strip search and testified that he collected Lee's belongings.[61] Although he was handcuffed and compliant, Lee

[55] *Id.* at pp. 134-136, 139, 382.
[56] Rec. Doc. 145-18, Lawrence Depo, pp. 184-185.
[57] Rec. Doc. 150-15, Coleman Depo, pp. 190-191.
[58] Rec. Doc. 1.
[59] Rec. Doc. 150-15, Coleman Depo, pp. 198, 239.
[60] Rec. Doc. 143-5, p. 42; *see also* Rec. Doc. 145-18, Lawrence Depo, pp. 113-114.
[61] Rec. Doc. 143-7, Carboni Depo, pp. 177-188.

claims that he was unjustifiably and suddenly struck by Lawrence, which caused him to fall three to five feet to his side after the blow. Lee contends Carboni's testimony establishes that he witnessed Lawrence's physical assault and had an opportunity to intervene. Carboni testified that Lee attempted to strike Lawrence with his left hand, and Lawrence "open hand slapped [Lee] on the side of his face."[62]  Following this hit, Lee "fell to the ground."[63] Lee then "immediately jump[ed] back up" and took "off running to the back of the building."[64] Carboni testified that Lee was screaming/yelling but could not make out exactly what he was saying.[65]  Lee tripped and fell a second time approximately ten feet from the exit door.[66] Lee claims that while he was on the ground, Lawrence kicked him twice in the ribs.[67] Although Carboni was in the warehouse room and heard Lee yelling and screaming loudly during this incident, Carboni testified that he "didn't do nothing."[68] Lee maintains that Carboni was present during the violation of his constitutional rights such that Carboni either participated in or failed to intervene to prevent the violations from occurring. That is the basis of Carboni's liability. Lee attributes his severe injuries to events Carboni witnessed, heard, and in which he participated.

Lee admitted that his fractured ribs and facial injuries were directly caused by Lawrence and not Wallace; however, Lee maintains that Wallace entered the room after Lawrence assaulted him, failed to render aid, failed to intervene or report Lawrence's illegal conduct, and instead used unnecessary force with the leg sweep of an injured,

---

[62] *Id.* at pp. 178-179.
[63] *Id.* at p. 180.
[64] *Id.* at p. 182.
[65] *Id.* at pp. 183-184.
[66] *Id.* at p. 185.
[67] Rec. Doc. 143-6, Lee Depo, p. 136-137, 139.
[68] Rec. Doc. 143-7, Carboni Depo, p. 188.

crying, handcuffed individual who posed no threat.[69] Further, that Lee "caught" himself from falling after the leg sweep does not render it a constitutional use of force.[70]

Lee did not complain to Officer Nevels about any pain or injury while in the holding cell. The video evidence reveals no evidence of external injury and no behavior consistent with pain or guarding. Lee testified that Nevels was aware of the beating Lee suffered at Lawrence's hands; thus, Lee did not need to tell Nevels about his injuries. Moreover, Lee testified that he "figured [Nevels] wouldn't care."[71] Lee contends the absence of visible external injuries does not undermine his case, and his medical records from Our Lady of the Lake Hospital establish that he suffered a closed fracture of the left seventh rib, chest pain, left facial pain, and difficulty breathing.[72]

Lee filed this lawsuit asserting various federal and state law claims against the Defendants. Lee asserts the following federal claims under 42 U.S.C. § 1983:

Count I:       Fourth Amendment excessive force against all Defendants
Count II:      Fourth Amendment unlawful search against all Defendants
Count III:     Fourth Amendment unlawful seizure against all Defendants
Count IV:      First Amendment retaliation against Wallace and Lawrence
Count V:       Malicious Prosecution against Wallace and Lawrence
Count VI:      *Monell* Liability against the City/Parish for Defendants' conduct
Count VII:     Failure to Intervene against all Defendants

Lee asserts the following Louisiana state law claims:

Count VIII:    Assault against all Defendants
Count IX:      Battery against all Defendants
Count X:       False Imprisonment against all Defendants
Count XI:      Defamation against Wallace and Lawrence
Count XII:     Negligence against all Defendants
Count XIII:    Malicious Prosecution against Wallace and Lawrence

---

[69] Rec. Doc. 159-1, Lee Depo, pp. 318, 349, 385.

[70] *Id.* at p. 385.

[71] *Id.* at pp. 167-169.

[72] *Id.* at p. 182; Rec. Doc. 176-1. The medical records do not explicitly confirm that Lee had trouble breathing; the records indicate that he "denie[d] shortness of breath" (p. 10); was in "no respiratory distress, no stridor, speaking in full, resp. equal nonlabored, no stridor, or wheezing heard" (p. 11); "normal breath sounds and air entry. No wheezing, rhonchi, or rales" (p. 21).

Count XIV:    *Respondeat Superior* (Vicarious Liability) against the City/Parish

Although not listed as a separate count, Plaintiff also seeks punitive damages from all Defendants.

Wallace moves for summary judgment, arguing that he is entitled to the defense of qualified immunity on Lee's Fourth Amendment claims of unlawful search and seizure, excessive force, and failure to intervene.[73]  Wallace also moves to dismiss Lee's state law claims of assault, battery, and negligence, and his claim for punitive damages.[74] Carboni moves for summary judgment arguing that he is entitled to the defense of qualified immunity on Lee's Fourth Amendment claims of unlawful search and seizure, excessive force, and failure to intervene, and he also seeks summary judgment on Lee's state law claims for false imprisonment and punitive damages.[75]  Lawrence has moved for summary judgment on Count IV (First Amendment Retaliation), Count V (Malicious Prosecution), and Count VII (Failure to Intervene) to the extent that it alleges that "Officer[] Lawrence failed to intervene when officer Carboni was using excessive force against Mr. Lee" of Plaintiff's claims under 42 U.S.C. § 1983 and Count X (False Imprisonment), Count XI (Defamation), and Count XIII (Malicious Prosecution) under state law.[76] Although the City/Parish urges the Court to decline the exercise of supplemental jurisdiction over Lee's state law claims, it moves for summary judgment on all claims asserted under federal and state law, arguing that Lee's "state law claims amount to the state law equivalent of the alleged federal claims, which fall in turn."[77]

---

[73] Rec. Doc. 142-2.
[74] *Id.*
[75] Rec. Doc. 143-2.
[76] Rec. Doc. 144-2.
[77] Rec. Doc. 150-3, p. 17.

## II.    SUMMARY JUDGMENT STANDARD

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[78] This determination is made "in the light most favorable to the opposing party."[79] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[80] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[81] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[82]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[83] All reasonable factual inferences are drawn in favor of the nonmoving party.[84] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary

---

[78] FED. R. CIV. P. 56(a).
[79] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[80] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)).
[81] *Rivera v. Hous. Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[82] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[83] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[84] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[85] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without "any significant probative evidence tending to support the complaint."'"[86]

### III.    CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

42 U.S.C. § 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law.[87] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[88]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[89] To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[90]

### A.    Qualified Immunity

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial."[91]  While

---

[85] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citation omitted).
[86] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (alteration in original) (quoting *Anderson*, 477 U.S. at 249).
[87] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[88] 42 U.S.C. § 1983.
[89] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).
[90] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[91] *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

qualified immunity is technically an affirmative defense, it is a plaintiff's burden to negate the defense once it has been raised.[92]

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct.[93] A court may begin its analysis of qualified immunity with either prong.[94] At the summary judgment stage, a plaintiff satisfies the first prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the official's conduct."[95] This proof need not be "absolute," but must consist of more than "mere allegations."[96] The second prong requires that "[t]he constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right."[97]

A public official may assert the defense of qualified immunity even though a plaintiff's civil rights have been violated if the official's conduct was objectively reasonable.[98] "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."[99] To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust

---

[92] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).
[93] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[94] *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).
[95] *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).
[96] *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).
[97] *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998).
[98] *Id.* at 467.
[99] *Goodson v. Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

'consensus of cases of persuasive authority,'"[100] and defined with a "high 'degree of specificity.'"[101] However, the cases relied upon are not required to be identical. There may be "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[102] The "clearly established" test ensures that officials have "fair warning" that certain conduct violates the Constitution.[103]

The application of the qualified-immunity standard changes the burden shifting of summary judgment.[104] When qualified immunity is asserted by the defendant public officials, the burden shifts to the plaintiff to show that the defense is not available.[105] Unlike the typical scenario, the official need not demonstrate an absence of a genuine dispute of material facts to shift the burden.[106] To meet this burden, a plaintiff must, as do other non-movants for summary judgment, adduce evidence to demonstrate a genuine dispute of material facts.[107] However, a plaintiff overcoming qualified immunity must go further to satisfy a more strenuous burden because, in addition to adducing sufficient evidence to demonstrate a mere dispute, a plaintiff must also demonstrate that his version of the facts constitutes a violation of clearly established law.[108] Where a plaintiff fails to cite or identify law clearly establishing a constitutional violation, denial of qualified immunity is not

---

[100] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

[101] *District of Columbia v. Wesby*, 538 U.S. 48, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam)).

[102] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (*en banc*) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

[103] *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney*, 367 F.3d at 350).

[104] *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 f.3d 319, 328–29 (5th cir. 2020).

[105] *Id.* at 329-30.

[106] *Id.* at 330.

[107] *Id.*

[108] *Id.* at 329–330.

justified even if, given the state of the law, the plaintiff "could have done so."[109]

### B. Unlawful Seizure/False Arrest

The Fourth Amendment to the Constitution guarantees "the right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . and [that] no warrants shall issue, but upon probable cause."[110] A constitutional claim for false arrest "requires a showing of no probable cause."[111] Probable cause is established by "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[112] "Probable cause does not demand that an officer's good-faith belief that a suspect has committed or is committing a crime be 'correct or more likely true than false.'"[113] Rather, "it requires only facts sufficient to establish the sort 'of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act."'"[114] Probable cause means a "fair probability" that a crime has been committed.[115] Although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark."[116]

"Police detention constitutes an 'arrest,' such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a

---

[109] *Id.* at 345.
[110] U.S. Const. amend. IV.
[111] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).
[112] *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)).
[113] *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)).
[114] *Id.* at (quoting *Florida v. Harris*, 133 S.Ct. at 1055 (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. at 231, 238, 103 S.Ct. 2317))).
[115] *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia,* 179 F.3d 265, 269 (5th Cir. 1999)).
[116] *Garcia*, 179 F.3d at 269.

formal arrest."[117] In determining whether a *Terry* stop rises to the level of an arrest, "the 'critical threshold issue is the intrusiveness of the seizure.' Regardless how efficient it may be for law enforcement officials to engage in prolonged questioning to investigate a crime, or how reasonable in light of law enforcement objectives it may be to detain a suspect until various inquiries can be made and answered, a seizure that in duration, scope, or means goes beyond the bounds of *Terry* cannot be reconciled with the Fourth Amendment in the absence of probable cause."[118] The Fifth Circuit holds that, to determine whether a detention exceeded the bounds of a *Terry* stop and rises to the level of an arrest, "[t]he relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation."[119] This question is "always one of reasonableness under the circumstances."[120] Police officers are not "automatically authorized to employ procedures" like handcuffing or using force in every investigatory detention,[121] but "[h]andcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause."[122]

Where the defense of qualified immunity is asserted in this context, the Fifth Circuit has explained:

> In the false arrest context, qualified immunity will apply "if a reasonable officer could have concluded that there was probable cause upon the facts then available to him." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001); *see Club Retro*, 568 F.3d at 204 . . . Actual probable cause is not necessary; merely *arguable* probable cause is sufficient to trigger qualified immunity. *Club Retro*, 568 F.3d at 207 ("[P]laintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but

---

[117] *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (citing *United States v. Corral–Franco*, 848 F.2d 536, 540–41 (5th Cir. 1988); *United States v. Bengivenga*, 845 F.2d 593, 596–97 (5th Cir. 1988) (en banc)).
[118] *United States v. Sharpe*, 470 U.S. 675, 691 (1985) (quoting *United States v. Place*, 462 U.S. 696, 722 (1983) (Blackmun, J., concurring)).
[119] *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000).
[120] *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993).
[121] *Id.*
[122] *Jordan*, 232 F.3d at 450.

mistaken) probable cause for the arrests."); *see also D.C. v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 591, 199 L.Ed.2d 453 (2018). Defeating qualified immunity is thus "a significant hurdle." *Brown*, 243 F.3d at 190.[123]

### 1. <u>Probable Cause</u>

Defendants maintain that, considering the totality of the circumstances, there was probable cause to initially detain Plaintiff at the scene and to later arrest him.  Defendants point to evidence that the residence had been under surveillance for about a week for suspected drug and gang activity; on the date in question, several people were standing in front of the residence around a vehicle that had a switched license plate; Wallace detected a strong odor of marijuana outside the residence under the carport that got stronger when Lee exited from the door; contemporaneous with Lee's exit, an armed individual seen in the doorway quickly closed the door at the sight of law enforcement. At the same time, two people exited the residence via a back window, one threw off a firearm, and both ran away from law enforcement. Defendants argue the exigent circumstances at the scene justified Lee's immediate detention for officer safety, and the odor of marijuana surrounding Lee's person, and his constructive possession of the later-discovered guns and drugs, provided probable cause for his arrest.

Lee counters that the officers had no reasonable suspicion, much less probable cause, to detain and arrest him as he exited the house calmly and was not in possession of any contraband.  Further, while the residence might have been under prior surveillance, Lee maintains he had not been under surveillance, and the officers had no knowledge to connect him to their investigation. Lee argues that proximity to suspected contraband does not create individualized suspicion, and the law does not allow a person's "mere

---

[123] *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023) (original emphasis).

propinquity" to suspected criminals to establish probable cause.[124]  Lee maintains that being in the "wrong place at the wrong time" did not give Defendants probable cause to arrest him.[125]

The Court has considered the summary judgment evidence submitted by all parties in this matter, including all video footage from the officers' body worn cameras and the video footage from the Brave Cave facility, and the Court finds that the undisputed summary judgment evidence in this matter establishes that the officers had probable cause to detain and arrest Lee under the totality of the circumstances.

On numerous occasions, the Fifth Circuit has held that the odor of marijuana alone provides probable cause to search a vehicle at a *Terry* stop.[126] Citing to Sixth Circuit jurisprudence, Defendants maintain that this odor alone likewise provides probable cause to arrest.[127] However, as the Eastern District of Louisiana court noted in *United States v. Muse*, "the smell of marijuana on the street alone does not give police officers probable cause to arrest people standing on the street without something more connecting the smell to the particular arrested person."[128] "The Fifth Circuit has *not* held that merely smelling marijuana on the street provides officers with probable cause to arrest bystanders."[129]  However, the odor of marijuana was not the only circumstance confronted

---

[124] Rec. Doc. 174, p. 7 (quoting *Ybarra v. Illinois*, 444 U.S. 85 (1979); *Maryland v. Pringle*, 540 U.S. 366 (2003)).

[125] *Id.*

[126] *See, e.g.*, *United States v. McSween,* 53 F.3d 684, 686–87 (5th Cir. 1995) (holding "the smell of marihuana alone may be ground enough for a finding of probable cause" to search a vehicle) (collecting cases); *United States v. Saunders*, 476 F.2d 5, 6–7 (5th Cir. 1973)( when there is marijuana in plain view); *United States v. Lopez-Ortiz*, 492 F.2d 109, 111 (5th Cir. 1974); *United States v. Jaquez*, 849 F.2d 935, 937 (5th Cir. 1988)(when it emanates from personal property); *United States v. Garcia*, 849 F.2d 917, 919 (5th Cir. 1988).

[127] *See* Rec. Doc. 142-2, p. 19 (brief p. 12); Rec. Doc. 144-2, p. 10(both quoting *United States v. Santiago*, 139 F.4th 570, 572 (6th Cir. 2025) (confirming that a "smell of marijuana, localized to a particular person," is sufficient for arrest)).

[128] No. 18-75, 2018 WL 6523383, at *7 (E.D. La. Dec. 12, 2018).

[129] *Id.* at *7, n. 99.

by the officers. The Court must evaluate the totality of the circumstances to determine whether it was reasonable at the time for Wallace to detain or arrest Lee when he exited the residence.

The City/Parish maintains that Lee's constructive possession of drugs and guns also contributed to probable cause for Lee's arrest. In Louisiana, it is axiomatic that one need not actually possess a controlled dangerous substance to violate the prohibition against possession thereof, as constructive possession is sufficient.[130] And, while the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession, one may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it.[131]  Factors to consider in making such a determination include the individual's knowledge that the drugs were in the area, the individual's relationship with the person found to be in actual possession, the individual's access to the area where the drugs were found, evidence of recent drug use, and physical proximity to the drugs.[132]

The Fifth Circuit has emphasized that: "The law charges us with determining the reasonableness of the actions taken in light of the cause that existed <u>at the time of arrest</u> .... 'whether [an] arrest [is] constitutionally valid depends in turn upon whether, <u>at the moment the arrest was made</u>, the officers had probable cause to make it – <u>whether at that moment</u> the facts and circumstances within their knowledge and of which they had

---

[130] *State v. Porter*, 296 So.2d 302, 304 (La.1974).
[131] *State v. Dowell*, 857 So.2d 1098, 1104 (La.App. 4th Cir.2003) (citing *State v. Smith*, 257 La. 1109, 245 So.2d 327 (1971); *State v. Harris*, 647 So.2d 337 (La.1994); *State v. Bell*, 566 So.2d 959 (La.1990)).
[132] *State v. Anderson*, 842 So.2d 1222, 1227 (La.App. 2d Cir.2003).

reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'"[133]

"Police officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot."[134] "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances."[135] "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion."[136]

The Supreme Court has "recognized that law enforcement officers need to protect themselves and the public at large from violence that may ensue in the course of such encounters."[137] "It therefore held that if police officers are justified in believing that the individuals whose suspicious behavior they are investigating at close range are armed and presently dangerous to the officers or to others, they may conduct a limited protective search for concealed weapons."[138] "An officer need not be certain that an individual is armed; the issue is whether a reasonably prudent man could believe, based on 'specific

---

[133] *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (citations omitted) (emphasis in original); *accord Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")).

[134] *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc).

[135] *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989); *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993); *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc)).

[136] *Id.* (citing *United States v. Galberth*, 846 F.2d 983, 989 (5th Cir. 1988) (citing *Terry*, 392 U.S. at 19, 88 S. Ct. at 1878–79)).

[137] *Rideau*, 969 F.2d at 1574.

[138] *Id.* (citing *Terry*, 392 U.S. at 24, 88 S. Ct. at 1881; *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972)).

and articulable facts,' that his safety or that of others is in danger."[139]

"In assessing reasonableness, 'due weight' must be given to the facts and inferences viewed 'in light of [the officer's] experience.'"[140] "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers."[141]

Additionally, "[i]n assessing the reasonableness of an officer's actions, 'it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'"[142] "The officer's state of mind, or his stated justification for his actions, is not the focus of our inquiry."[143] "As long as all the facts and circumstances, viewed objectively, support the officer's decisions, the Fourth Amendment is satisfied."[144] "We must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context."[145]

First, the Court finds that there was reasonable suspicion to detain Lee to secure the premises and ensure officer safety. The body worn camera video footage confirms that when Lee exited the residence, another resident, who was armed, quickly closed the door at the sight of the officers. The smell of marijuana was strong and increased when

---

[139] *Id.* (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *Maryland v. Buie*, 494 U.S. 325, 332, 110 S. Ct. 1093, 1097, 108 L. Ed. 2d 276 (1990)).

[140] *Michelletti*, 13 F.3d at 841 (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

[141] *United States v. Tuggle*, 284 F. App'x 218, 228 (5th Cir. 2008) (per curiam) (quoting *United States v. Holloway*, 962 F.2d 451, 459 (5th Cir. 1992)).

[142] *Rideau*, 969 F.2d at 1574 (quoting *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880 (citations omitted)).

[143] *Id.* (citing *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S. Ct. 2778, 2782–83, 86 L. Ed. 2d 370 (1985); *Scott v. United States*, 436 U.S. 128, 138–39, 98 S. Ct. 1717, 1723–24, 56 L. Ed. 2d 168 (1978); *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991)).

[144] *Id.*

[145] *Id.*

the residence door opened and Lee exited.  Even if Lee was not the source of the marijuana smell, it was not unreasonable for officers to attribute the smell as emanating from Lee's person, or the residence, or both. The Court is cognizant that officers must often make split-second judgments as these types of investigations develop and change rapidly. Once officers observed another resident armed and acting evasively, they had reasonable suspicion to detain Lee, having just exited the residence, to determine whether he was armed in order to ensure their safety and preserve the integrity of a potential crime scene.[146]

The Court finds that the officers had probable cause to arrest Lee. His attempt to characterize his presence at the scene as that of a mere bystander is unavailing for purposes of the probable cause analysis. Whether Lee was in constructive possession of drugs and/or guns is a merits question. Officers do not have to prove the merits of constructive possession to demonstrate that a reasonable officer would have formed a reasonable suspicion criminal activity involving Lee was afoot.

The reasoning and analysis of the Eastern District of Louisiana court in *Eyer v. Evans*[147] is directly applicable to the present facts.  In *Eyer*, plainclothes police officers on patrol in New Orleans came upon a group of five individuals standing in a circle on a public street.[148] The officers detected the scent of marijuana emanating from the group as they approached; they observed some of the individuals take a puff of the cigarette

---

[146] *See Allen v. Cisneros*, 815 F.3d 239, 246 (5th Cir. 2016)(quoting *United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999)("police officers may 'take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of the [investigatory] stop.'"); *United State v. Wells*, No. 08-83-JVP-DLD, 2009 WL 1883056, at *3 (M.D. La. June 30, 2009("[u]pon observing the firearm in plain view, it was reasonable for the officer to render the scene safe and to investigate further.").

[147] No. 03-342, 2004 WL 193116 (E.D. La. Jan. 29, 2004).

[148] *Id.* at *1.

and pass it on.[149] All five individuals, including the plaintiff, were arrested for possession of marijuana, even though the plaintiff was never observed in actual possession or physical contact with the cigarette.[150] The plaintiff sued under Section 1983 alleging Fourth Amendment unlawful arrest.[151]

Much like Lee, the *Eyer* plaintiff argued that probable cause to arrest was lacking because "his mere presence in the group of culpable individuals [was] insufficient to prove constructive possession" because he never asserted "dominion or control over the marijuana."[152] The officer-defendants moved for summary judgment, arguing that probable cause existed to arrest the plaintiff under the facts of the case, particularly because the plaintiff was "next in line" to get the cigarette, and they were entitled to qualified immunity.[153]

The court granted summary judgment in favor of the officers finding that they were entitled to qualified immunity. Notably, the court stated that it had "little doubt that the State, relying only upon the evidence of record in this case, would not meet its burden of proof to *convict* Plaintiff for possession of marijuana;" this fact nevertheless did not inform the court whether the officers had probable cause to arrest the plaintiff.[154] Emphasizing this point, the court rejected the plaintiff's argument suggesting "that the probable cause determination turns solely on what the officers actually saw [the [p]laintiff do prior to his arrest," noting rather that the Supreme Court had recently held otherwise in *Maryland v. Pringle*.[155]

---

[149] *Id.*
[150] *Id.*
[151] *Id.*
[152] *Id.*
[153] *Id.*
[154] *Id.* at *2 (original emphasis).
[155] *Id.* at *3 (citing *Maryland v. Pringle*, 540 U.S. 366 (2003)).

In *Pringle*, the Supreme Court unanimously held that when law enforcement officers discovered drugs in an armrest in the backseat of a vehicle and cash in the glove compartment, the officers had probable cause to arrest all the passengers if no passenger admitted ownership of the contraband because the contraband could belong to any one of them.[156] The *Eyer* court explained that the Supreme Court "found it 'an entirely reasonable inference' that any or all three of the occupants had knowledge of, and exercised dominion and control over the drugs."[157] This was because Pringle was one of three men in the car, the money was in the glovebox in front of him, and the cocaine found in the backseat was equally accessible to Pringle as to any of the other occupants; additionally, none of the occupants offered any information as to the ownership of the cocaine or money.[158]

> The Court also rejected Pringle's "guilt by association" argument. *Pringle*, 540 U.S. at ——, 124 S.Ct. at 801. Pringle argued that under *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the officers lacked particularized probable cause to arrest him. In *Ybarra*, the Court held that officers lacked probable cause to search all the patrons on the premises during the execution of a search warrant directed at a tavern. 444 U.S. at 91. The *Ybarra* Court clarified that probable cause requires that the belief of guilt be particularized with respect to the specific person to be searched. *Id*.
>
> The *Pringle* Court distinguished Pringle's situation from the one in *Ybarra*. *Pringle*, 540 U.S. at ——, 124 S.Ct. at 801. Specifically, the Court noted that Pringle was one of three men in a relatively small automobile as opposed to being one of numerous unwitting tavern patrons who just happen to be on the premises when a search warrant is executed. *Id*. **Because a passenger in a car will often be engaged in a common enterprise with the driver and have the same interest in concealing the evidence of their wrongdoing, it was reasonable for the officer to infer a common enterprise among Pringle and his companions**. *Id*.[159]

---

[156] *Pringle*, 540 U.S. at 374.
[157] *Eyer*, 2004 WL 193116, at *3 (quoting *Pringle*, 540 U.S. at 800).
[158] *Pringle*, 540 U.S. at 800.
[159] *Eyer*, 2004 WL 193116, at *3 (emphasis added).

Applying *Pringle*, the *Eyer* court held that "the fact that the officers did not see [the] [p]laintiff in actual possession of the marijuana [did] not require a finding of no probable cause" because the facts of *Eyer* did "not suggest that [the] [p]laintiff was an unwitting member of the crowd. Rather, he was one of five individuals standing together in a circle."[160] And although the officers did not directly observe the plaintiff smoke the cigarette, "they had probable cause to believe that he, like any of the other members of the group, had constructive or joint possession or control of the cigarette."[161]

The Court finds that the principles in *Pringle* and *Eyer* apply here. Probable cause does not require proof beyond a reasonable doubt or evidence sufficient to establish guilt. Rather, it requires only a fair probability that the suspect committed or was committing an offense. Here, Lee was not merely present in a public place near criminal activity; he emerged from a residence that officers had probable cause to believe was an active location for narcotics trafficking where illegal drugs and firearms were discovered, multiple occupants were armed, and other occupants attempted to flee. Under these circumstances, it was reasonable for the officers to conclude that Lee was more likely than not participating in, or aiding and abetting, ongoing criminal activity. Additionally, Lee arrived at the residence in a vehicle later discovered to contain illegal drugs and stolen firearms. While it was later determined that Lee was not the owner of the vehicle, the officers could reasonably believe that Lee constructively possessed the drugs and firearms in both Tate's vehicle and the residence. Accordingly, all Defendants are entitled to summary judgment on Lee's Fourth Amendment unlawful seizure/false arrest claim.

---

[160] *Eyer*, 2004 WL 193116, at *3
[161] *Id.*

2. Qualified Immunity for Arguable Probable Cause

Alternatively, the Court finds that the officers had arguable probable cause and are thus entitled to qualified immunity. The Fifth Circuit has held that, "'[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'"[162] Law enforcement officers may rely on the "collective knowledge of the officers" at the scene to determine that probable cause exists for an arrest.[163]

The Second Circuit has opined: "Even where a reviewing court, applying these principles, concludes that probable cause to arrest was lacking in a given case, an officer 'will still be entitled to qualified immunity . . . if he can establish that there was "arguable probable cause" to arrest.'"[164] "'Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"[165]

For the same reasons set forth above, the Court finds alternatively that the officers had arguable probable cause to arrest Lee and are, thus, entitled to qualified immunity if Lee's arrest violated the Fourth Amendment.

## C. Unlawful Search – Strip Searches

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." A person may claim "the protection of the Fourth Amendment" if

---

[162] *Westfall v. Luna*, 903 F.3d 534, 543 (5th Cir. 2018) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

[163] *U.S. v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992).

[164] *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

[165] *Id.* (quoting *Escalera*, 361 F.3d at 743) (internal quotation marks omitted); *accord Walczyk v. Rio*, 496 F.3d, 139, 163(2nd Cir. 2007).

he "has a legitimate expectation of privacy in the invaded place."[166] Without question, a person has a legitimate expectation of privacy in his or her body. As the Seventh Circuit puts it, "[t]he privacy interest in one's body is clearly a heightened and fundamental one."[167] Federal courts across the country have noted that "[s]trip searches and body cavity searches are demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signifying degradation and submission."[168]

### 1. Court's Prior Ruling on BRPD Strip Search Policy

Early in this litigation, Lee moved for a preliminary injunction seeking to enjoin the BRPD's Strip Search policy which allowed strip/cavity searches of detainees upon reasonable suspicion rather than probable cause.[169] After an evidentiary hearing, the Court enjoined the BRPD's Strip Search Policy only as it related to the provision allowing a strip/cavity search of a detainee – as opposed to an arrestee or inmate – on reasonable suspicion alone, finding that the United States Constitution requires probable cause for such an invasive intrusion of privacy of an individual that has not even been arrested.[170] In that Ruling, the Court addressed only the facial challenge to that portion of the BRPD policy. The Court concluded that this policy was facially unconstitutional, and those findings are undisturbed. The Court is now examining whether Lee was subjected to an unconstitutional search based on the particular facts of a more fully developed summary judgment record. Here, Lee maintains he was subjected to two unlawful strip searches, first on Cadillac Street at the scene of his detention when the officers pulled down his

---

[166] *Rakas v. Illinois*, 439 U.S. 128, 143 (1998) (citations omitted).
[167] *Henry v. Hulett*, 969 F.3d 769, 778 (7th Cir. 2020).
[168] *Martin v. City of San Antonio*, 5:05-CV-020-XR, 2006 WL 2062283, at *5 (W.D. Tex. July 25, 2006)(citing *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) and *Way v. County of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006)).
[169] Rec. Doc. 76.
[170] Rec. Doc. 96.

pants and exposed his underwear on the public street and second in the Brave Cave warehouse when all of his clothing was removed and he was strip searched.

### 2. The Search on Cadillac Street

Defendants concede that, during the initial strip search on Cadillac Street, Lee was not under arrest but was merely detained for officer safety and to secure the premises.[171] Thus, the Court must evaluate the constitutionality of the frisk/exposure of Lee's underwear based on his status as a detainee, not an arrestee. In accordance with this Court's previous Ruling, officers could not strip search Lee based on reasonable suspicion but needed probable cause. Based on the undisputed facts of this case, the Court finds that the officers had probable cause to search Lee in the manner conducted at the time of his detention.

The Court turns to a consideration of applicable jurisprudence regarding the constitutionality of strip searches during investigatory stops, which necessarily begins with *Terry v. Ohio*.[172] "To justify a patdown of the driver or a passenger during a traffic stop, ... the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."[173] A "patdown" of a passenger in a vehicle legitimately stopped is governed by the same "stop and frisk" rules developed under *Terry* and its progeny.[174] Even when a police officer has reasonable suspicion that a passenger is armed and dangerous, "a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is

---

[171] Rec. Doc. 142-3, Carboni Depo., p. 124.
[172] *Terry v. Ohio*, 392 U.S. 1 (1968).
[173] *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *see also Ybarra v. Illinois*, 444 U.S. 85, 92–93 (1979) (describing "reasonable belief that [the subject of a frisk] was armed and presently dangerous," as "a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons").
[174] *Johnson*, 555 U.S. at 327.

necessary for the discovery of weapons which might be used to harm the officer or others nearby.'"[175] However, an officer "overstep[s] the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*" by "continued exploration" of the suspect's clothing "after having concluded that it contained no weapon."[176] This includes "squeezing, sliding and otherwise manipulating the contents of [the subject's clothing]" after it is clear they are not carrying a weapon.[177]

"To conduct more than a frisk of a person's outer clothing for weapons, the searching officer must have a warrant and probable cause."[178] In evaluating the Fourth Amendment's warrant requirement, the Supreme Court has held that "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great."[179] Moreover, "absent an emergency," a search warrant is always required "where intrusions into the human body are concerned."[180] Additionally, "while a search unequivocally requires probable cause and a warrant, the reasonableness of a search must be closely scrutinized where the search implicates 'the individual's dignitary interests in personal privacy and bodily integrity.'"[181] The Fifth Circuit recognizes that a strip search involves a "danger of embarrassment: where, in short, the suspect is forced to disrobe to a state

---

[175] *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 26); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) (emphasizing that the purpose of a frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence"); *Sibron v. New York*, 392 U.S. 40, 64–65 (1968) (finding a frisk unconstitutional where the officer "made it abundantly clear that he sought narcotics" in the defendant's pockets rather than conducting "a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault").
[176] *Dickerson*, 508 U.S. at 378.
[177] *Id*. (quoting *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn. 1992)).
[178] *Haliburton v. City of Ferndale*, 653 F.Supp.3d 377, 390 (E.D. Mich. 2023)(citing *Ybarra*, 444 U.S. at 96)).
[179] *Schmerber v. California*, 384 U.S. 757, 770 (1966).
[180] *Id.*
[181] *Haliburton*, 653 F.Supp.3d at 390 (quoting *Winston v. Lee*, 470 U.S. 753, 761, 767 (1985).

which would be offensive to the average person."[182]

Additionally, apart from the scope and justification for the search, the Court must also consider whether the manner and place in which it was carried out render the search unreasonable.[183] The location of a strip search is an important aspect in determining its reasonableness.[184]

With these principles in mind, the Court turns to the frisk/search of Lee's waistband on Cadillac Street immediately after his detention by police officers.  The Court observed the video footage of this entire encounter. Lee is handcuffed and demanding to be told why he is being detained; the officers respond that they do not have to tell him anything, and they begin to pat him down for weapons/contraband.  Because Lee is somewhat resistant, the officers place him face down on the ground and pull his pants down just below his buttocks.  His pants are never lowered beyond the length of his underwear – neither naked skin nor genitals are ever exposed. Lee appears to be wearing compression/athletic boxer briefs, and the skin below his underwear is never exposed. Although an officer does pat his body around his genital area, no cavity search is performed.  His underwear is never pulled away from his body. Whether this temporary, partial exposure of Lee's boxer briefs on a public street constitutes a strip search within the meaning of the Fourth Amendment is not easily ascertained by the Court's review of jurisprudence within the Fifth Circuit or throughout the country.

---

[182] *U.S. v. Sandler,* 644 F.2d 1163, 1168 (5th Cir.1981).
[183] *See Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001).
[184] *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) ("the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street").

Federal courts have not adopted a single uniform definition of what constitutes a strip search.[185] Generally, a strip search under federal law includes the exposure of a person's naked body for the purpose of a visual or physical examination.[186] A body cavity search under federal law includes a visual or physical examination into the body's recesses.[187] By contrast, where clothing is not removed and genitals are never exposed, courts have been more reluctant to find a strip search occurred. In *Schmidt v. City of Bella Villa*, the Eighth Circuit held that a search was not a strip search within the meaning of Fourth Amendment jurisprudence where the suspect was not required to disrobe completely, noting that strip searches requiring a person to disrobe completely have a uniquely invasive and upsetting nature.[188] According to Black's Law Dictionary, a strip search is "[a] search of a person conducted after that person's clothes have been removed, the purpose usually being to find any contraband the person might be hiding."[189] Courts use the term "strip search" to generally describe any inspection of the naked body.[190]

The Court will assume *arguendo* for purposes of this motion, viewing the facts in the light most favorable to Lee, that the temporary, partial exposure of Lee's boxer briefs on a public street constitutes a strip search. However, for the same reasons the Court

---

[185] See *Brown v. Short*, 729 F.Supp.2d 125 (D.C. C. 2010)

[186] *See Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)(citing *United States v. Dorlouis*, 107 F.3d 248, 256 (4th Cir.1997) (treating the act of pulling down a suspect's trousers, while leaving his boxer shorts intact, as a strip search and equating "an unconstitutional strip search" with "an unnecessarily intrusive search"); *United States v. Vance*, 62 F.3d 1152, 1156 (9th Cir.1995) (treating pulling down a suspect's trousers and underwear in public as a strip search); *United States v. Cardenas*, 9 F.3d 1139, 1145 (5th Cir.1993) (noting that directing a suspect to undress amounts to a strip search)),

[187] *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979).

[188] 557 F.30 564, 575 (8th Cir. 2009).

[189] (8th ed.2004).

[190] *See Kelsey v. County of Schoharie*, 567 F.3d 54, 62 (2d Cir.2009); *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 63 (1st Cir.2003); *Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694, 695 (7th Cir.1998); *Allison*, 611 F.Supp.2d at 453 n. 12.

found Defendants had probable cause to detain Lee under the totality of the circumstances, the Court likewise finds that they had probable cause to perform this search.  As discussed above, considering the totality of the circumstances, the Court finds that the officers' search of Lee on Cadillac Street was supported by probable cause.  As Lee exited the residence, officers observed other occupants with firearms attempt to flee and evade law enforcement. To eliminate the immediate threat – that Lee, like his associates, might be armed – and preserve evidence, the officers briefly manipulated the defendant's waistband and lowered his outer pants only to the extent reasonably necessary to determine whether weapons or contraband were concealed there. Any exposure of Lee's underwear was incidental to the limited search and not the objective. The officers did not expose Lee's genitals, require removal of any article of clothing or Lee's underwear, or conduct a visual or cavity inspection. The video evidence establishes that the search was short and no more intrusive than reasonably necessary under the circumstances.

Alternatively, the Court finds that the officers are entitled to qualified immunity for the search on Cadillac Street. Given that the Court could not locate definitive jurisprudence defining what level of underwear exposure constitutes a "strip search" for purposes of the Fourth Amendment, the law was not clearly established at the time of this search such that the officers could know that partially exposing Lee's underwear was a constitutional violation.

### 3. Warehouse Strip Search

At the Brave Cave warehouse, Lee was ordered to strip nude, bend over, and cough.[191] No contraband was found.[192] Lee's testimony establishes that he removed his clothes and put them back on, and he was not touched during the strip search.[193] The search was incident to an arrest supported by probable cause. The Court finds that the strip search at the warehouse was constitutional and in accordance with BRPD Policy.[194] The Fifth Circuit has made clear that, "[o]ur case law, following the Supreme Court, makes clear that probable cause to search is no different than probable cause to arrest."[195] The Supreme Court has upheld searches incident to valid arrests, holding it is "entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."[196] The justification for such a search "rests as much on the need to disarm the suspect ... as it does on the need to preserve evidence on his person for later use at trial."[197]  Relying on *Robinson*, the Fifth Circuit in *United States v. Ruigomez*, held that a strip search performed at the station house incident to an arrest did not violate the Fourth Amendment because it was a "full search" performed incident to the arrest.[198]

---

[191] Rec. Doc. 150-10, Lee Depo., pp. 374-375; Rec. Doc. 150-14, Kennedy Depo., p. 20.

[192] Rec. Doc. 150-14, Kennedy Depo., p. 74.

[193] Rec. Doc. 143-6, Lee Depo., pp. 132-134.

[194] *See* Rec. Doc. 65, p. 26.  It should be noted that the Court did not enjoin any portion of the BRPD strip search policy that related to arrestees. *See* Ruling, Rec. Doc. 165.

[195] *Mendenhall*, 213 F.3d at 235; *accord United States v. Green*, No. 10-CR-185-LY, 2010 WL 11531162, at *3 (W.D. Tex. Nov. 4, 2010), *aff'd*, 455 F. App'x 469 (5th Cir. 2011).

[196] *Chimel v. California,* 395 U.S. 752, 763 (1969).

[197] *United States v. Robinson*, 414 U.S. 218, 234 (1973); *United States v. McFarland,* 633 F.2d 427, 429 (5th Cir. 1980)("the purpose of the doctrine permitting searches incident to arrest is to allow discovery and preservation of destructible evidence like [a] piece of paper.").

[198] 702 F.2d 61, 66 (5th Cir. 1983).

Here, Lee was arrested in connection with illegal drugs and firearms activity, not a minor offense like a DUI or a traffic violation.[199] The search was conducted privately by officers of the same sex without physical contact with the arrestee's body. The Court finds that Lee has failed to demonstrate a genuine dispute of material fact on the Fourth Amendment unlawful search claim. Accordingly, all Defendants are entitled to summary judgment on this claim.

## D. Excessive Force

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable."[200] "To gauge the objective reasonableness of the force, '[the Court] must balance the amount of force used against the need for force.'"[201]

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S. at 8–9, 105 S. Ct. at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").[202]

---

[199] *See e.g.*, *Kelly v. Foti*, 77 F.3d 819 (5th Cir. 1996)(where the court held that a strip search of a motorist arrested for a minor traffic offense violated the Fourth Amendment absent such individualized suspicion); *Watt v. City of Richardson Police Department*, 849 F.2d 195 (5th Cir. 1988)(where the court struck down a visual strip and body cavity search of a woman arrested for failure to license her dog, emphasizing her cooperation, sobriety, and the absence of any indication she was carrying weapons or contraband); *Holton v. Mohon*, 684 F.Supp. 1407 (N.D. Tex. 1987)(where court found that a strip search and visual body cavity inspection of a driver arrested for DWI was unreasonable where nothing indicated she was harmful or could be carrying a weapon or contraband).

[200] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)(citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

[201] *Id*. at 187–88 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).

[202] *Graham*, 490 U.S. at 396; *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("This balancing test 'requires careful attention to the facts and circumstances of each particular case.'" (quoting *Graham*, 490 U.S. at 396)).

"That second factor is the most important: [The Court] must determine whether [Decedent] 'posed an immediate threat to the safety of the officers or others.'"[203] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[204]

The "Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."[205] That is, "the 'reasonableness inquiry is objective: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"[206]

The Court's "inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[207] The Court must evaluate such instances as "'a reasonable officer on the scene,' and . . . 'allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[208] The Court "cannot allow the

---

[203] *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).
[204] *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865.
[205] *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 337 (5th Cir. 2008)(quoting *Devenpeck*, 543 U.S. at 153, 125 S.Ct. 588).
[206] *Davis v. Romer*, 600 F. App'x 926, 931 (5th Cir. 2015) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).
[207] *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).
[208] *Flores v. City of Palestine*, 381 F.3d 391, 399 (5th Cir. 2004) (internal brackets omitted) (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865).

'theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.'"[209]

### 1. Officer Carboni – No Physical Contact

As to Carboni, there is absolutely no summary judgment evidence in the record that Carboni ever touched Lee. In his deposition, Lee could not even identify Carboni as one of the officers involved in the incident, despite his attorney's repeated efforts to refresh his memory. While Lee maintains he has a viable claim against Carboni for bystander liability, which the Court will address below, Lee offers no substantive argument or evidence to justify sustaining an excessive force claim against Carboni, and Carboni is entitled to summary judgment on this claim as a matter of fact and law.

### 2. Officer Wallace – Leg Sweep

Lee asserts an excessive force claim against Wallace for his use of a leg sweep maneuver on Lee in the warehouse.  This claim also fails.  First, it is undisputed that Lee suffered no injury from this leg sweep as Lee himself testified that he "caught himself" before he could even fall to the ground after the leg sweep.[210]  Thus, there is no injury from this use of force. Moreover, Lee admitted that he was initially non-compliant with Wallace's order to stop running towards the exit door.[211]  Under clearly established law, Wallace's use of a leg sweep to bring the suspect into compliance was justified and reasonable.  It is undisputed that this is only direct force used by Wallace upon Lee.

In *Bailey v. Ramos*, the Fifth Circuit held that a police officer's use of a leg maneuver to cause a handcuffed arrestee standing against a wall to slide to the ground

---

[209] *Malbrough v. Stelly*, 814 F. App'x 798, 806 (5th Cir. 2020) (quoting *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994)).
[210] Rec. Doc. 150-10, Lee Depo p. 385.
[211] *Id.*at p. 384.

and become seated was not objectively unreasonable and, thus, did not constitute excessive force in violation of the Fourth Amendment because the arrestee was not complying with the officers' lawful orders to sit down.[212] The *Bailey* court noted that "[o]ur caselaw has 'clearly established ... that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's use of force is excessive.'[213] But use of force against a handcuffed suspect is not excessive if the suspect is resisting by ignoring lawful commands."[214]   Applying *Bailey* to the present case, based on Lee's admission that he did not initially comply with Wallace's orders and his admission that he suffered no injury from the leg sweep, Wallace is entitled to summary judgment on the excessive force claim.

### 3.   Officer Lawrence – Physical Assault

Lawrence does not move for summary judgment on the excessive force claims asserted against him. His adoption of other parties' arguments and evidence does not suffice as a summary judgment motion. Lawrence presents no arguments or evidence relating to Lee's claim that he used excessive force against Lee.

Nevertheless, the City/Parish moves for summary judgment on Lee's excessive force claim, arguing that he cannot establish any elements of his claim – a greater than *de minimus* injury that was directly caused by the alleged excessive force that was unreasonable under the circumstances. The City/Parish offers three arguments in support of its motion on this claim: (1) that Lee has changed his story so many times that he has rendered his story uncredible and the Court should not give Lee the usual legal inferences

---

[212] *Bailey v. Ramos*, 125 F.4th 667 (5th Cir. 2025).
[213] *Id.* at 684 (quoting *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015)).
[214] *Id.* (citing *Pratt v. Harris County,* 822 F.3d 174, 178 (5th Cir. 2016) (finding use of force is not excessive against handcuffed suspect who is verbally and physically resisting)).

afforded a non-movant;[215] (2) that the video camera footage of Lee in the facility holding cell, after the alleged strip search and beating by Lawrence, captures Lee laughing with officers and other detainees, without any visible signs of serious injury;[216] and (3) the City/Parish offers medical expert testimony that Lee's fractured rib could not have been caused by a kick, and Lee has failed to present contradicting medical testimony regarding causation.[217]

### a.    Credibility

The City/Parish contends that Lee has changed his story regarding critical facts that touch on timing and location of the conduct he alleges took place such that "there is no basis for reasonable inferences in Plaintiff's favor regarding the inconsistent testimony and video evidence."[218]  The City/Parish offers the following authority:

> Courts have repeatedly held that a plaintiff's internally contradictory deposition testimony cannot, by itself, create a genuine dispute of material fact. *See, e.g., Pina v. Children's Place*, 740 F.3d 785, 799 (1st Cir. 2014) (holding that summary judgment was appropriate where plaintiff's admissions in deposition undermined her claims); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming summary judgment where plaintiff's deposition testimony was "replete with inconsistencies" (citation omitted)); *United States v. 1980 Red Ferrari*, 827 F.2d 477, 480 n.3 (9th Cir. 1987) (affirming summary judgment where only evidence was plaintiff's "incredible and contradictory" deposition testimony); *Hayes v. Norfolk S. Corp.*, 25 Fed. Appx. 308, 314 (6th Cir. 2001) (holding that appellant's "contradictory" and "confused" testimony was insufficient to create fact issue). Although the non-moving party is entitled to all reasonable inferences when evaluating a summary judgment motion, when a plaintiff's claims are only supported by his "own contradictory and incomplete testimony ... no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Jeffreys*, 426 F.3d at 555 (citation and alteration omitted). *Bush v. Compass Group USA, Inc.*, 683 Fed. Appx. 440, 449 (6th Cir. 2017) (emphasis supplied).

---

[215] Rec. Doc. 150-3, pp. 10-11.
[216] *Id.* at p. 11.
[217] *Id.* at pp. 12-14.
[218] Rec. Doc. 150-3, p. 12.

*Burns v. Intermodal Cartage Company*, 2024 WL 1018526 at *7 (N.D.Tex. 2024).[219]

Notably, the City/Parish does not cite a Fifth Circuit case in support of this argument, only non-binding out-of-circuit opinions. Also, while the Court acknowledges that Lee has demonstrated some inconsistencies between his allegations and his deposition testimony, not all the inconsistencies are necessarily material to the genuinely disputed fact here as to whether Lawrence used excessive force against him in the Brave Cave warehouse. Importantly, that part of Lee's story has not changed.

This court addressed similar arguments by the defendant in *Moore v. Boeker*.[220] In that case, the Court noted that the defendant focused his summary judgment motion on "asserted inconsistencies between the plaintiff's pleadings before this Court and statements made by the plaintiff in administrative remedy proceedings and during his deposition."[221] But the Court found "that [those] discrepancies [were not] sufficient to eliminate the essential factual dispute between the parties in this case relative to the events" in question, and the Court emphasized that the "parties [] provided competing accounts of the events leading up to the use of force on the referenced date, and the resolution of this factual dispute [would] require a credibility determination which is not susceptible of determination on motion for summary judgment."[222] The Court concluded that the "purported inconsistencies … between the plaintiff's pleadings, his prior written statements, and his deposition testimony are more appropriately addressed by the

---

[219] *Id.* at p. 10.
[220] No. 12-0051-JWD-RLB, 2014 WL 4662398 (M.D. La. Sep. 18, 2014).
[221] *Id.* at *5.
[222] *Id.*

defendant in seeking to impeach the plaintiff's credibility on cross-examination at a trial."[223]  The same is true in this case.

b.     Nature of Injury

Defendants submitted nearly thirty minutes of video footage of Lawrence in the holding cell of the facility, talking and laughing with other suspects and the police officers there. This video indicates the time is approximately 8:30 pm, so the video depicts Lee after the alleged beating and strip search by Lawrence. Defendants argue Lee's observable physical condition and behavior during this time period contradicts all versions of his story. The City/Parish contends Lee "participated in a cordial conversation with Officer Steven Nevels … without exhibiting any pain or injury."[224] Defendants' argument on this point is well taken. The Court watched the video footage of Lee in the holding cell post-"beating" several times. While Lee's counsel argues that Lee left the facility "so badly that the local jail refused to admit him until he received medical treatment," and that this "beating fractured Mr. Lee's rib and caused visible facial injuries,"[225] the video footage does not support this claim. Lee is seen talking, laughing, and joking with other suspects and the police officers nearby. There are no visible injuries to Lee's face or body. Further, despite the claim that he suffered a freshly broken rib, at one point, Lee stands up and later leans from side to side while he sits on the bench. At no time does Lee wince, cry, or appear to be in any pain. His actions are inconsistent with pain from a broken rib.

Lee responds to this claim, arguing that, while he sat talking with Officer Nevels, his face was hurting, but he did not tell Officer Nevels because he "figured he wouldn't

---

[223] *Id.*
[224] Rec. Doc. 150-2, p. 2 (citing Exhibit 8 Nevels Body Worn Camera Footage).
[225] *Id.* at p. 4.

care."[226]  He claims he has a high pain tolerance and did not see the point in complaining because he had a "reasonable belief that reporting injuries to his captors would be futile."[227]  Lee also offers his medical records which establish that he suffered a fractured rib and complained of chest and face pain at the hospital.[228]

In the Court's view, this is a close call. While a plaintiff need not allege a significant injury for an excessive force claim, he must allege an injury that is "more than *de minimus*."[229] Temporary pain without lasting effect does not rise above a *de minimis* injury."[230] In viewing Lee's behavior, movement, and demeanor in the holding cell, one could reasonably conclude that he suffered no more than temporary pain from a *de minimis* injury.  But the Court finds that it is for the jury to reach this conclusion.  Lee has a medical record that shows he suffered a broken rib on the date in question. While Defendants also challenge causation, which will be addressed below, the Court finds that Lee has presented sufficient evidence that a jury should view the video and determine the nature of Lee's injuries and whether they are beyond *de minimis.*

In *Scott v. Harris*, the United States Supreme Court held that, where a video recording, or conceivably some other unquestionable form of evidence, contradicts a plaintiff's recollection to such a degree that no reasonable juror could credit the plaintiff's testimony, the court must accept the facts as shown in the recording.[231] However, in *Crane v. City of Arlington, Texas,* the Fifth Circuit further refined this rule, clarifying that a

---

[226] Rec. Doc. 150-10, Lee Depo, pp. 167-169.
[227] Rec. Doc. 152, p. 4.
[228] Rec. Doc. 176-1.
[229] *See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (holding that pain and bruising on the arrestee's wrists from handcuffing were de minimis injuries and could not support an excessive force claim).
[230] *Howard v. City of Houston, Texas*, No. H-21-1179, 2022 WL 479940, at *5 (S.D. Tex. Feb. 16, 2022)(citing *Tarver*, 410 F.3d at 752).
[231] *Scott v. Harris*, 550 U.S. 372, 378–79 (2007).

court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account, and that when video evidence is ambiguous or incomplete, the modified rule from *Scott v. Harris* has no application.[232] Specifically, the *Crane* court emphasized that, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' that job is reserved for the jury."[233] The court admonished the district court, stating that "'*Scott* was not an invitation for trial courts to abandon the standard principles of summary judgment by making credibility determinations or otherwise weighing the parties' opposing evidence against each other any time a video is introduced into evidence.'"[234]

Based on the above, the Court finds that the jury must make the conclusions regarding the nature and extent of Lee's alleged injuries.

c.     Medical Causation

The City/Parish also contends summary judgment is proper on this claim because Lee has failed to controvert their expert medical testimony on causation.  The City/Parish engaged Dr. Curtis R. Partington to perform an independent medical review of Lee's rib fracture x-rays and opine on causation. Dr. Partington noted a "very small lucency passing through the lateral aspect of the left 7th rib" that "shows the appearance of a small non displaced fracture," but "[t]here is no surrounding hematoma, pneumothorax, or pleural fluid. The remainder of the ribs are normal in appearance. The overlying soft tissues are

---

[232] 50 F. 4th 453 (5th Cir. 2022)(*abrogated on other grounds as recognized by Tuttle v. Gallegos,* 180 F. 4th 209 (5th Cir. 2026)).
[233] *Id.* at 462 (citing *Darden v. City of Forth Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018)).
[234] *Id.* (quoting *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021)).

normal in their appearance."[235]  Dr. Partington opined that:

> The possibilities for a traumatic injury such as this are: Direct trauma from his elbow when he fell, a stress response from his fall, or direct trauma from an outside source. It would however be very difficult to injure someone seriously enough to break a rib but not cause any overlying bruising or edema. If this was an outside trauma [From being kicked By a police officer] there would undoubtedly have been some bruising and damage of the overlying soft tissues. Furthermore it would be very difficult to have such a focal trauma to injure only one rib [usually these types of injuries fracture two or three consecutive ribs.[236]

The City/Parish maintains that Louisiana law requires expert medical testimony "when multiple accidents, other possible causes of the injury, and/or other conditions 'cast doubt' on the plaintiffs['] claims that the injuries were caused by the accident at issue."[237] The City/Parish contends that, because Plaintiff has not offered competing medical evidence on causation, summary judgment is proper on the excessive force claim.

Plaintiff counters that Louisiana law does not require expert medical testimony when causation falls within the realm of common knowledge.  Further, that Lee went into the Brave Cave healthy and came out with a fractured rib after "a violent encounter with police" is sufficient evidence from which a jury could draw the inference that Lee's injuries resulted from excessive force.[238]

Under Louisiana law, a tort plaintiff must show that his or her injuries - more probably than not - were caused by the defendant's actions.[239] In the context of medical causation, the Louisiana Supreme Court has held, "[w]hile expert medical testimony is sometimes essential, it is self-evident that, as a general rule, whether the defendant's

---

[235] Rec. Doc. 150-21.
[236] *Id.*
[237] Rec. Doc. 150-3, p. 12 (quoting *Bordenave v. Delta Air Lines, Inc.*, 2020 WL 377017, at *2-3 (M.D. La. 2020)).
[238] Rec. Doc. 174, p. 10.
[239] *Perry v. City of Bossier City*, No.  , 2019 WL 1782482, at *3 (W.D. La. Apr. 23, 2019).

fault was a cause in fact of a plaintiff's personal injury or damage may be proved by other direct or circumstantial evidence."[240] Louisiana courts typically reduce this principle to a rule that "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge."[241]

In short, the question of a causation is "intensely factual."[242] Even so, to survive summary judgment when alleging causation of an injury or condition outside of common knowledge, a Section 1983 plaintiff in Louisiana must produce competent medical evidence that, when combined with other direct and circumstantial evidence, allows a jury to rationally infer that the defendant's conduct caused the injury or condition. The Court finds that Lee has done so here by introducing the medical records of his broken rib following the incident in the Brave Cave warehouse.

Defendants rely heavily on this Court's decision in *Bordenave v. Delta Air Lines, Inc.*, wherein the undersigned granted summary judgment because the plaintiff had no medical expert.[243] There, the plaintiff claimed that his neck was injured on an airplane when his head was struck by the passenger in front of him who reclined her seat.[244] The Court held that expert testimony was necessary because "five days before the subject accident, Plaintiff had neck pain rated at 10/10 in severity" from a pre-existing neck injury.[245] The Court reasoned that the question of medical causation was not be

---

[240] *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993) (citing *Jordan v. Travelers Ins. Co.*, 245 So. 2d 151, 155 (La. 1971)).
[241] *Chavers v. Travis,* 2004-0992, p. 10 (La. App. 4 Cir. 4/20/05); 902 So. 2d 389, 396 (citing *Hutchinson v. Shah*, 94-0264, p. 3 (La. App. 1 Cir. 12/22/94); 648 So. 2d 451, 452).
[242] *Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999) (quoting *Savidge v. Fincannon,* 836 F.2d 898, 905 (5th Cir. 1988)).
[243] No. 18-00637, 2020 WL 377017, at *4 (M.D. La. Jan. 23, 2020).
[244] *Id*. at *1.
[245] *Id*. at *3.

discernable by common knowledge under those circumstances.[246]

The facts in the present case are easily distinguishable.  First, Defendants have not directed the Court to any jurisprudence holding that a broken rib is the kind of injury that is outside "common knowledge" such that a jury cannot draw reasonable inferences from competing medical evidence. Second, there is no evidence that Lee's fractured rib was a pre-existing injury. Third, while the City/Parish offers Dr. Partington's assessment of causation, the jury could observe the medical records and Lee's testimony and choose not to credit Dr. Partington's opinion. A jury is free to accept or reject medical opinion testimony.[247] Finally, it is undisputed that Dr. Partington never observed Lee after his injury and never examined him directly. Thus, the Court concludes that, based on the current record, the issue of causation must be decided by the jury.

For the reasons set forth above, the Court finds that Carboni and Wallace are entitled to summary judgment on Lee's Fourth Amendment excessive force claims; summary judgment is DENIED as to the City/Parish's motion. Lee's excessive force claim remains against Lawrence as he did not move on this claim.

### E. Failure to Intervene/Bystander Liability

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[248] "[A]n officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3)

---

[246] *Id.*
[247] *See* Fifth Circuit Pattern Jury Instructions (Civil) § 3.5 (2020).
[248] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted).

chooses not to act.'"[249] However, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability."[250] The officer must have a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[251] In evaluating whether an officer took reasonable measures to protect a suspect, courts have considered both the duration of the alleged use of excessive force by other officers and the location of the suspect relative to the officer against whom a claimant seeks bystander liability.[252] There is no bystander claim when the incident unfolds so quickly that officers could not have practically intervened.[253]

Lee asserted a bystander liability claim against all three officer Defendants for failing to intervene to stop all constitutional violations asserted. Based on the Court's findings, the only constitutional claim for which bystander liability could attach here is Lawrence's use of excessive force upon Lee. As discussed above, neither Carboni nor Wallace used excessive force on Lee such that any other officer had occasion to intervene. Lee does not present the Court with any evidence that would raise a genuine question of fact as to Carboni's or Wallace's ability to have intervened and stopped

---

[249] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted).

[250] *Vasquez v. Chacon*, No. 08-2046, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell v. Acadian Ambulance Service*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001)); *see also Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) ("[Plaintiff] concedes that he was harmed by three inmates and that an officer's mere presence, without more, does not give rise to a bystander liability claim.").

[251] *See Hale*, 45 F.3d at 919; *Nowell*, 147 F. Supp. 2d at 507 (same); *Vasquez*, 2009 WL 2169017, at *6 (same) (citing *Hale, supra; Nowell, supra*).

[252] *Vasquez*, 2009 WL 2169017, at *6; *see, e.g., Morris v. Pierce*, No. 07–cv–0080, 2008 WL 4287967, at *7 (W.D.La. Sep. 17, 2008) (no bystander liability because no evidence to suggest that officer had a reasonable opportunity to intervene in a struggle that lasted 10–15 seconds); *Gilbert v. French,* No. H–06–3986, 2008 WL 394222, at *27 (S.D.Tex. Feb. 12, 2008) (no indication that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Haggerty v. Texas Southern Univ.*, No. Civ.A. H–01–2990, 2005 WL 2030866, at *4 (S.D.Tex. Aug. 22, 2005) (no bystander liability because officer was several yards away and did not use any force on suspect); *Paternostro v. Crescent City Connection Police Dept.*, No. 00–2740, 2002 WL 34476319, at *11 (E.D.La. Apr. 2, 2002) (no bystander liability because evidence did not show that officer was in a location from which he could have had a realistic opportunity to prevent the violations of another officer).

[253] *Covarrubias v. Wallace*, 612 Fed.Appx. 701, p. 702 (5th Cir. May 11, 2015).

Lawrence from assaulting Lee. In both instances, the purported assault occurred suddenly and was completed in seconds; neither Carboni nor Wallace could have prevented what had already occurred.

As to Wallace, Lee's own testimony indicates that Wallace entered the room having heard the "scuffle," ordered Lee to come away from the exit door, swept Lee's leg when he did not comply, and never touched Lee again after he complied. The evidence submitted by both Lee and Wallace is that Wallace entered the room after Lawrence's alleged assault had taken place. Lee testified that, after he put his clothes back on, Lawrence "charged" him and "landed" a punch to Lee's "left jaw."[254] Lee testified that Lawrence "hit [him] some more," Lee dodged Lawrence, fell back against the wall and to the ground, and then Lawrence kicked him in the ribs with steel-toe boots.[255] Lee testified that Wallace came into the room after Larence had kicked him in the ribs.[256] Lee argues that Officer Kennedy testified that the "commotion" Wallace heard "lasted long enough for Wallace to hear it from the office area, run to the warehouse, and enter" as evidence that it was "not an instantaneous event."[257] Even accepting this argument as true, the layout of the facility on the video shows that it would only take seconds for Wallace to exit the office area and enter the warehouse area where Lee was being held, and it is undisputed that the alleged assault was complete by the time Wallace arrived.

Even though Lee and Carboni characterize the events in the Brave Cave warehouse differently, neither portrays a prolonged, continuous assault by Lawrence. Lee attempts to portray the assault as ongoing, but his evidence undermines this argument.

---

[254] Rec. Doc. 143-6, p. 135.
[255] *Id.* at p. 136.
[256] *Id.* at p. 137.
[257] Rec. Doc. 154, p. 9

First, and critically, Lee could not even place Carboni in the warehouse. He testified under oath repeatedly, after being shown a picture of Carboni, that Carboni was not present in the warehouse room where he was allegedly beaten.[258] Carboni, however, acknowledged that he was in the warehouse room when Lee's strip search was conducted, and he testified that he observed Lee attempt to punch Lawrence, to which Lawrence responded by slapping Lee's face and knocking Lee to the ground.[259] Then Lee jumped up and attempted to run to the back of the facility where he was met with Wallace entering the room. Carboni testified that all this took place "within about three seconds."[260] After the leg sweep by Wallace, Lee became compliant and nothing else occurred.

The law is clear that sudden, brief assaults do not trigger a bystander's duty to intervene. Federal courts in the Fifth Circuit consistently hold that, when force is applied rapidly and the incident is over before an officer could realistically act, bystander liability does not attach.[261] The summary judgment record in this matter establishes that the alleged assault was quick and complete before Wallace and/or Carboni could reasonably perceive the need to intervene, formulate a response, and physically intercede. Because no reasonable jury could conclude from the summary judgment evidence that Wallace or Carboni had sufficient time and opportunity to respond to the alleged use of force, the

---

[258] Rec. Doc. 143-6, Lee Depo., pp. 370-371.

[259] Rec. Doc. 142-7, Carboni Depo., p. 180.

[260] *Id.* at p. 182.

[261] *See, e.g., Morris v. Pierce*, No. 07–cv–0080, 2008 WL 4287967, at *7 (W.D.La. Sep. 17, 2008) (no bystander liability because no evidence to suggest that officer had a reasonable opportunity to intervene in a struggle that lasted 10–15 seconds); *Gilbert v. French*, No. H–06–3986, 2008 WL 394222, at *27 (S.D.Tex. Feb. 12, 2008) (no indication that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Haggerty v. Texas Southern Univ.*, No. Civ.A. H–01–2990, 2005 WL 2030866, at *4 (S.D.Tex. Aug. 22, 2005) (no bystander liability because officer was several yards away and did not use any force on suspect); *Paternostro v. Crescent City Connection Police Dept.,* No. 00–2740, 2002 WL 34476319, at *11 (E.D.La. Apr. 2, 2002) (no bystander liability because evidence did not show that officer was in a location from which he could have had a realistic opportunity to prevent the violations of another officer).

bystander claims fail, and all Defendants are entitled to summary judgment on this claim.

## F. First Amendment Retaliation

Lee claims that he was arrested and beaten for engaging in First Amendment protected activity during his initial detention, arrest, transport, and alleged assault in the Brave Cave warehouse.  Specifically, Lee contends he was arrested and later assaulted by Lawrence because he was critical of the officers' conduct and handling of his detention/arrest; he shouted "fuck the police" and repeatedly threatened the officers with litigation during the encounter. Lee also argues that the adverse actions taken against him, including the use of excessive force and filing of criminal charges, "would unquestionably 'chill a person of ordinary firmness from continuing to engage in' protecting speech criticizing police misconduct."[262]

The First Amendment prohibits government officials from taking retaliatory actions against individuals for engaging in protected speech.[263] To prevail on a First Amendment retaliation claim, a plaintiff must establish that: "(1) he engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [the plaintiff's] exercise of constitutionally protected conduct."[264] Generally, "the validity of a plaintiff's First Amendment claim hinges on probable cause for [the] arrest."[265]

---

[262] Rec. Doc. 175, p. 11.
[263] *Nieves v. Bartlett*, 587 U.S.391, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d. 441 (2006)).
[264] *Westfall v. Luna*, 903 F.3d 534, 550 (5th Cir. 2018) (per curiam) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).
[265] *Id.*

However, in *Imani v. City of Baton Rouge*, the Court noted the Supreme Court's admonition that:

> "[a]lthough probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."[266] "In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech."[267]

> . . .

> Thus, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[268] "After making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause."[269]

The Court has held that there was probable cause to arrest Lee. Lee has not presented the Court with any summary judgment evidence demonstrating similarly situated individuals engaging in the same conduct that were not arrested. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' First Amendment retaliation claim regarding his arrest.

The Court turns to Lee's claim that Lawrence's alleged assault constitutes First Amendment retaliation. In 2021, the Fifth Circuit expressly acknowledged an unresolved circuit split on whether a plaintiff may bring a standalone First Amendment retaliation claim based on an officer's use of excessive force during a seizure. In *Batyukova v. Doege*, the Fifth Circuit noted that district courts within the circuit have reached competing conclusions — with the Western District of Texas in *Ybarra v. Davis* holding that a First

---

[266] *Imani*, 614 F.Supp.3d 306, 357 (M.D. La. 2022)(quoting *Nieves*, 139 S.Ct at 1727).
[267] *Id.* (quoting *Nieves*, 139 S.Ct at 1727).
[268] *Id.* (quoting *Nieves*, 139 S.Ct at 1727) (citation omitted)).
[269] *Id.* (quoting *Nieves*, 139 S.Ct at 1727).

Amendment retaliation claim is cognizable separately from a Fourth Amendment excessive force claim, while the Northern District of Mississippi in *Price v. Elder* held that the Fourth Amendment functions as the exclusive remedy — and the Fifth Circuit expressly left the question for another day.[270]

One year later, the Western District of Texas looked at the issue again in *Zinter v. Salvaggio*.[271]  As here, in *Zinter*, the plaintiff alleged First Amendment retaliation both for his arrest and later for the use of force against him. The court noted that his "First Amendment claim has another wrinkle because he alleged a claim for use of force. It remains an open question whether, under *Graham*, [whether] a plaintiff may bring a First Amendment retaliation claim based on an officer's excessive force during a seizure."[272] The court noted that "[d]istrict courts in this circuit have come to opposite conclusions."[273] The *Zinter* court "assume[d] that a parallel First Amendment retaliation claim is cognizable for a Fourth Amendment excessive-force claim."[274] This year, in *McCoy v. Harris County, Tex.*, the Southern District of Texas stated: "While there is some debate over whether a plaintiff can bring a First Amendment retaliation claim based on retaliatory use of force, this Court will proceed, as many other district courts have within the Fifth Circuit, that First Amendment retaliatory force claims are not entirely precluded by the availability of excessive force claims sounding in the Fourth Amendment."[275]  This Court will follow the majority of Fifth Circuit district courts and conclude that Lee may bring a standalone First

---

[270] 994 F.3d 717 (5th Cir. 2021).

[271] 610 F.Supp.3d 919 (W.D.Tex. 2022).

[272] *Id.* at 958 (citing *Batyukova* 994 F.3d at 730).

[273] *Id.* (*comparing Ybarra*, 489 F. Supp. 3d at 632*, with Price v. Elder*, 175 F. Supp. 3d 676, 679 (N.D. Miss. 2016)).

[274] *Id.*

[275] No. 4:25:-cv-135, 2026 WL 1020530, at *10-11 (S.D. Tex. Jan. 30, 2026)(citing *Ordonez v. Gonzales*, No. EP-23-CV-99-KC, 2024 WL 1250181, at *20–21 (collecting cases)).

Amendment retaliation excessive force claim.

Because Lee has maintained a claim against Lawrence for excessive force, he likewise has presented sufficient summary judgment evidence such that a reasonable jury could conclude that Lawrence assaulted Lee in the Brave Cave warehouse based on Lee's criticism and mocking of Lawrence throughout the incident from his arrest to his interrogation in the facility. If a jury believes that Lawrence assaulted Lee, it may also believe that Lawrence was motivated by Lee's protected speech.  Accordingly, motions for summary judgment are DENIED as to the First Amendment retaliation excessive force claim.

### G. Malicious Prosecution

Defendants maintain they are entitled to qualified immunity as a matter of law on Lee's federal malicious prosecution claim.  They cite the Fifth Circuit's recent decision in *Santander v. Salazar*, wherein the court held that police officers are shielded by qualified immunity for federal malicious prosecutions claims where the underlying conduct occurred before February 2023.[276]  In *Santander* the Fifth Circuit held:

> Regardless of whether Santander alleges a plausible claim for malicious prosecution, such a claim cannot overcome qualified immunity. That is because the elements of a § 1983 malicious prosecution claim had not been established at the time of the incident, such that the law was unsettled at the time of Salazar's conduct. *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) ("The second part of the [qualified immunity] inquiry looks to whether the right was clearly established at the time of the violation." (emphasis added)).

> Before 2022, our court did not recognize a federal claim for malicious prosecution at all. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc) (holding that " 'malicious prosecution' standing alone is no violation of the United States Constitution"); *see also Arnold*, 979 F.3d at 270 (stating, in 2020, that "facts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as

---

[276] 133 F. 4th 471, 478 (5th Cir. 2025).

unreasonable search or seizure"). In April 2022, however, the Supreme Court expressly recognized a § 1983 malicious prosecution claim in *Thompson v. Clark*, 596 U.S. 36, 42, 142 S.Ct. 1332, 212 L.Ed.2d 382 (2022), effectively abrogating *Castellano*.

But *Thompson* did not "lay out a comprehensive list of the elements for a Fourth Amendment malicious prosecution claim, and largely left the question of elements to the lower courts." *Armstrong*, 60 F.4th at 278. Only in February 2023 did this court articulate the elements of a post-*Thompson* malicious prosecution claim. *Id*. at 279. The alleged incident in this case occurred in July 2022, after *Thompson*, but months before *Armstrong*. Therefore, with regard to Santander's § 1983 malicious prosecution claim, Salazar could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate. Santander's malicious prosecution claim thus fails to overcome Salazar's assertion of qualified immunity.[277]

The conduct in this lawsuit occurred on January 9-10, 2023. Under *Santander*, the officers are entitled to qualified immunity for the federal malicious prosecution claim as there was no clearly established law prior to February 2023.

Lee does not present any legitimate or substantive response to Defendants' arguments or the holding in *Santander*. Lee attempts to distinguish *Santander* from this case, arguing that there, "the court's analysis turned on the specific timing and the evolving nature of the law during that transitional period." This vague argument does not distinguish this case from *Santander*. Moreover, the Court cannot see how this changes the express holding of *Santander* that the law on a federal malicious prosecution claim was not clearly established before February 2023. Accordingly, the individual Defendants are entitled to qualified immunity on Lee's federal malicious prosecution claims; thus, summary judgment is GRANTED on the federal malicious prosecution claim.

---

[277] *Id.*

### H. Municipal (*Monell*) Liability

Under § 1983, the BRPD is only liable "for acts for which it is actually responsible."[278] The Plaintiff must come forward with summary judgment evidence of "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[279]

An official policy is a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority.[280] "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[281] The City/Parish cannot be held liable under § 1983 for the tortious behavior of its employees under a theory of *respondeat superior*.[282] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[283] "Official municipal policies can take various forms. They often appear as written policies, but an official policy may also be an unwritten but 'widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'"[284]  Under this second category, a plaintiff must show "[a]ctual or constructive knowledge of [a] custom" that is "attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated

---

[278] *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998) (noting that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory)

[279] *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021).

[280] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d at 365, n. 64 (5th Cir. 2020).

[281] *Id.* at 365 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

[282] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[283] *Id.*

[284] *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021).

policy-making authority."[285]

Lee asserted *Monell* liability against the City/Parish, arguing that there is an unofficial custom, policy, pattern or practice within the BRPD regarding the following: the use of excessive force; false arrests; unlawful strip searches; First Amendment retaliation; using the Brave Cave facility as a "torture warehouse"; inadequate training, supervision, and discipline; and ratification of unconstitutional conduct. Critically, in the absence of an underlying constitutional violation, there can be no municipal liability under *Monell*.[286] Because the only constitutional violations that remain in this case are the use of excessive force in violation of the First and Fourth Amendments, only evidence relating to a pattern, practice, custom, or policy on those issues will confer liability upon the City/Parish in this case.

In response to the City/Parish's Motion for Summary Judgment,[287] Lee argued that the City/Parish is liable under *Monell* "for failing to adequately train officers on constitutional limitations for strip searches, use of force, probable cause for arrest, duty to intervene, and body camera usage."[288]  The evidence cited by Lee in support of these claims is as follows: (1) Lee's Amended Complaint wherein he alleges other incidents of

---

[285] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *see also Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

[286] *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).

[287] Lee confusingly argued that the City/Parish is not entitled to qualified immunity in this case.  *See* Rec. Doc. 174, pp. 11-12. However, qualified immunity applies only to individual defendants and not municipalities; thus, this argument is misplaced and irrelevant to the claims against the City/Parish. The City/Parish did not "fail to raise it" and thus "waive it" because it is not a defense available to a municipality at all.

[288] Rec. Doc. 174, p. 13.

excessive force, false arrests, and unlawful strip searches;[289] the deposition testimony of Deputy Chief Troy Lawrence, Sr., who testified that the Street Crimes unit received no unit-specific training on strip searches;[290] (3) the deposition testimony of BRPD Chief Murphy Paul, who testified that Deputy Chief Lawrence, Sr's "interpretation of reasonable suspicion" differed from his own understanding and raised concerns that "if officers were carrying out Troy Lawrence, Sr.'s articulation," it "would also be against departmental policy;"[291] (4) the deposition testimony of Lieutenant Lorenzo Coleman regarding the routine strip-searching of suspects taken to the Brave Cave;[292] (5) Chief Paul's testimony that he had concerns that the Street Crimes unit was carrying out unconstitutional strip searches;[293]  This evidence relates only to strip searches. The Court has held the strip searches performed on Lee *in this case* were constitutional; thus, even if this evidence sufficiently established a policy, pattern, practice or custom that more training was needed on how officers should constitutionally conduct strip searches, it is irrelevant to the City/Parish's liability *in this case*.

Lee repeatedly argues that there is an unofficial custom of BRPD officers turning off their body cameras before using excessive force,[294] but no evidence is cited to support this claim, and no evidence of any BRPD policy has been made part of the record. Lee also references news reports and exposés as evidence of a pattern or practice of constitutional violations. But this is not competent summary judgment evidence, either. Newspaper articles and media stories are "classic hearsay evidence" and not competent

---

[289] Rec. Doc. 150-5.
[290] Rec. Doc. 150-16, Lawrence, Sr. Depo., p. 87.
[291] Rec. Doc. 150-17, Paul Depo, pp. 113-117.
[292] Rec. Doc. 150-15, Coleman Depo., pp. 201-203.
[293] Rec. Doc. 150-17, Paul Depo., p. 117.
[294] Rec. Doc. 174, pp. 5-14.

summary judgment evidence.[295]

Further, Lee cannot rely on the unproven allegations in his unsworn Complaint to defeat summary judgment. Mere reference to prior lawsuits without proof of the underlying facts, outcomes, or similarity to the case at hand do not constitute competent summary judgment evidence of a pattern or practice. In *Reyes v. Greer*, the court held that a plaintiff failed to sufficiently plead a pattern or practice where he cited no specific examples of prior incidents and relied only on public pleadings in other lawsuits.[296] Similarly, in *Wilder v. Morgan*, allegations that 107 civil lawsuits were filed against a police department over a nine-year period did not show a widespread practice because the complaint failed to demonstrate that those lawsuits involved conduct similar to the conduct at issue, and the plaintiff did not place the complaints in context.[297]  If allegations from other lawsuits do not pass muster at the pleadings stage, they certainly cannot carry a plaintiff's summary judgment burden.

In *Haywood v. City of El Paso, Texas*, the plaintiff asserted Section 1983 claims under *Monell*.[298] The plaintiff in *Haywood* made many of the same claims asserted by Lee here: failure to properly train, supervise and discipline, deliberate indifference to violating constitutional rights, and ratification.[299]  In his Complaint and in briefing, the plaintiff provided various statistics and actions by the police department in an effort to demonstrate a widespread custom of excessive force.[300]  However, the court noted that, at the summary judgment stage, "[the plaintiff] must do more than merely allege the

---

[295] *Dise v. City of Houston*, No. H-10-2683, 2012 WL 12894804, at *5 (S.D. Tex. June 6, 2012)(citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008)).
[296] 686 F.Supp.3d 524, 547 (W.D. Tex. 2023).
[297] No. 6:20-CV-01383, 2022 WL 839128 (W.D. La. Mar. 18, 2022).
[298] 761 F.Supp.3d 975 (W.D. Tex. 2025).
[299] *Id.* at 998.
[300] *Id.*

existence of municipal policies or customs for which the City may be liable—he must provide evidence of such policies or customs."[301]  The court continued: "Haywood must produce evidence in the record, such as 'depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials,' that establish a genuine dispute of material fact as to whether the City has a custom or policy that was the moving force behind the Officers' excessive force."[302] Pointedly, the court found that:

> Haywood did not, however, produce any such reports or statistics, thus preventing the Court from confirming their authenticity or assessing whether they suffice under the rigorous standards applicable to *Monell* claims. Haywood also assures the Court that he will produce an expert at trial who "will provide testimony that will speak to the unconstitutionality of the City's policies." *Id.* at 45. But Haywood does not identify this expert, much less provide some competent evidence of the expert's testimony, such as a report or deposition transcript.[303]

The *Haywood* court noted that: "In federal court, it is black letter law that a plaintiff must provide more than 'allegations' and 'unsubstantiated assertions' to defeat summary judgment on a claim."[304] The court granted summary judgment in favor of the City on the *Monell* claims, stating: "Allegations in a complaint and vague references to the possibility of an expert testifying at trial fall far short of evidence establishing a genuine dispute of material fact."[305] Accordingly, Lee's allegations in his Amended Complaint, summarizing allegations in other lawsuits and hearsay news reports, are insufficient to defeat the City/Parish's summary judgment motion.

---

[301] *Id.* (citing FRCP 56(c)).
[302] *Id.*
[303] *Id.*
[304] *Id.*
[305] *Id.* at 999.

Lee also asserts a ratification claim against the City/Parish. When an authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the government entity.[306] However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations."[307] Additionally, the Fifth Circuit has "explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality."[308]

In *Peterson*, the Fifth Circuit explained:

In *City of St. Louis v. Praprotnik*, a case on which [plaintiff] relies [and which is the basis of ratification liability], the Supreme Court emphasized that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy...." 485 U.S. 112, 130, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988). Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority...." *Id. See also Kibbe v. City of Springfield*, 777 F.2d 801, 809 n.7 (1st Cir. 1985) ("The [district] court suggested that the City had ratified defendant Perry's action by clearing him and finding that he had acted in accordance with the police department's policies. We are unconvinced that a failure to discipline Perry or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy.").[309]

---

[306] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

[307] *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (finding that that the shooting of a fleeing suspect "hardly [rose] to" such a level, "particularly given the absence of evidence suggesting a culture of recklessness in the NOPD.")).

[308] *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (Fifth Circuit precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy")); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.").

[309] 588 F.3d at 848 n.2. *See also Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004) (quoting to the same propositions from *Praprotnik* and explaining that "[s]uch limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of respondeat superior, which theory *Monell* does not countenance.").

Furthermore, the Fifth Circuit has held that "[i]t is nearly impossible to impute lax disciplinary policy to [a governmental entity] without showing a pattern of abuses that transcends the error made in a single case."[310]

In support of this claim, Lee cites to one incident referenced in the Amended Complaint – The Green Incident (2020) – and states that Chief Paul acknowledged receipt of this complaint about Lawrence's conduct, referred the matter to Lt. Coleman rather than properly assigning it to Internal Affairs, then did not "pay attention to what's going on" about it until it was later reported in the press.[311]  This lone item of evidence does not satisfy the burden required to demonstrate a genuine dispute of material fact that the City/Parish engaged in a pattern of ratifying the alleged unconstitutional conduct of Troy Lawrence, Jr.  Accordingly, the City/Parish is entitled to summary judgment on the *Monell* claims.

## IV.    STATE LAW CLAIMS

As set forth above, Lee asserted the following state law claims against the Defendants in the following manner: assault, battery, and false imprisonment against all three officers; defamation against Wallace and Lawrence; malicious prosecution against Wallace and Lawrence; negligence against all three officers, and vicarious liability (*respondeat superior*) against the City/Parish.  Because the Court has granted Carboni's and Wallace's Motions for Summary Judgment in full and dismissed all federal claims asserted against them, the Court declines to exercise supplemental jurisdiction over any state law claims asserted against these Defendants.

---

[310] *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski,* 237 F.3d at 582 and affirming the district court's dismissal of the plaintiff's excessive force claim against a police department).
[311] Rec. Doc. 174, p. 14 (quoting Rec. Doc. 150-17, Paul Depo, pp. 99-100).

## A. False Imprisonment

In *Sanders v. CEOC L.L.C.*, the court noted that "Louisiana applies the same standards to analyze claims of false arrest, excessive force, and negligent training or supervision as the standards utilized under federal law."[312] Additionally, Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the Supreme Court of the United States to recognize a qualified good faith immunity for state officers under § 1983.[313]  Accordingly, for the same reasons the Court granted summary judgment in favor of all Defendants on Lee's Fourth Amendment unlawful seizure claim, the Court grants summary judgment in favor of all Defendants on Lee's state law false imprisonment claim.

## B. Assault & Battery

"The Fifth Circuit has stated that Louisiana's excessive force tort mirrors its federal constitutional counterpart."[314] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force."[315] Because Lee's assault and battery claims against Lee are essentially state law corollaries of his § 1983 claim for excessive force, the foregoing analysis of Lee's § 1983 excessive force claim against applies to Lee's state law claims for assault and battery, and summary judgment is denied as to those claims asserted against Lawrence.

---

[312] 586 F.Supp.3d 519, 527 (W.D. La. 2022)(citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), *rehearing denied* 146 F.3d 282, *cert. denied*, 525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998)).

[313] *Moresi v. State*, 567 So.2d 1081, 1093 (La. 1990).

[314] *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009)).

[315] *Id.* at 515 (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)); *see also Taylor v. United States*, No. 89-4332, 1991 WL 280066, at *11 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

### C. Defamation

Lee asserts a defamation claim against Lawrence based on the Police Report wherein Lawrence states that Lee possessed narcotics and resisted arrest – statements proven false.[316]    Louisiana law recognizes that "defamation involves the invasion of a person's interest in his or her reputation and good name."[317] For a plaintiff to prevail on a defamation claim, he "must prove: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury."[318] Words that accuse one of criminal conduct are considered defamatory *per se*.[319] If a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice are presumed, but may be rebutted.[320] Injury may also be presumed.[321]

Louisiana law provides that privilege is a defense to a claim of defamation.[322] This is so because public policy requires, under certain circumstances, free communication of information to others without the fear of incurring liability if the good faith communication turns out to be inaccurate.[323] There are two types of privilege: (1) absolute, and (2) conditional or qualified.[324] Only conditional or qualified privilege is relevant in this matter, which requires a two-step inquiry: (1) whether the circumstances of the communication give rise to a qualified privilege, and (2) whether the privilege was abused.[325] Lawrence has asserted a qualified privilege to the communications in the police report and argues

---

[316] Rec. Doc. 175, p. 18

[317] *Hoffman v. Bailey*, 257 F.Supp.3d 801, 829 (E.D. La. June 20, 2017); *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So.2d 129, 139.

[318] *Starr v. Boudreaux*, 2007-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 389.

[319] *Id.* (citing *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 675).

[320] *Costello*, 864 So.2d at 140.

[321] *Id.*

[322] *Id.* at 141.

[323] *Kennedy*, 935 So.2d at 681-82.

[324] *Id.* at 681.

[325] *Id.* at 682 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 745).

that the burden shifts to Lee to overcome this privilege.  Because he has no evidence to do so, Lawrence is entitled to summary judgment on this claim.

When there is probable cause for an arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based.[326] Because the Court found probable cause for Lee's arrest, Lawrence is entitled to summary judgment on the state law defamation claim.

### D.  Malicious Prosecution

"The elements of a malicious prosecution claim in Louisiana are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."[327]  Malice under Louisiana law can be inferred from a lack of probable cause or reckless disregard for the truth.[328] For example, in *Vidrine v. U.S.*, the court noted that malice could be established by showing that law enforcement officers

---

[326] *Robertson v. City of Shreveport*, No. CV 17-CV-0565, 2018 WL 1769373, at *3 (W.D. La. Apr. 12, 2018); *Thorn v. McGary*, 684 F. App'x 430, 435 (5th Cir. 2017)("Indeed, we have already concluded that there was probable cause for Thorn's arrest, and under these circumstances, Louisiana law affords police officers a qualified privilege against defamation actions.")(citing *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552, 562–64 (holding that police officers have a qualified privilege against defamation claims for "report[ing] the fact that a person was arrested and the charges for which the person is being held"); *see also Roche v. Aetna Cas. & Sur. Co.*, 303 So. 2d 888 (La. Ct. App. 1974), *writ denied*, 307 So. 2d 372 (La. 1975) (affirming dismissal of defamation claim where officer's arrest was supported by probable cause); *Wooten*, 2026 WL 299849, at *9 (When "there is probable cause for [an] arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based.").

[327] *Durant v. Gretna City*, 2020 WL 263669, at *29 (E.D. La. Jan 17, 2020)(quoting *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984)))).

[328] *Bledsoe v. Willis*, 665 F.Supp.3d 810, 818 (W.D. La. 2023); *Phillips v. Whittington*, 497 F.Supp.3d 122, 164 (W.D. La. 2020)).

lacked an honest and reasonable belief in the accused's guilt at the time charges were pressed.[329] Additionally, Louisiana courts have held that the continuation of a prosecution with malice and without probable cause can also satisfy the malicious prosecution framework.[330]

Lawrence is likewise entitled to summary judgment on this claim because Lee cannot demonstrate an absence of probable cause.

### E. Negligence

Lawrence did not move for summary judgment on the negligence claim asserted against him by Lee. Accordingly, this claim remains before the Court and will be presented to the jury at trial.

### F. Vicarious Liability

Under Louisiana law, an employer is liable for the acts of its employee committed in the course and scope of his employment.[331] These two terms are not synonymous. Rather, the course of employment refers to the time and place of the conduct; the scope of employment refers to the employment-related risk of injury.[332] "[A]n employee's conduct is within the course and scope of employment if the conduct is of the kind that the employee is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[333] When determining whether an employer could be vicariously liable for an intentional tort committed by its employee, courts look to whether: (1) the tortious act was primarily

---

[329] 846 F.Supp.2d 550, 559 (W.D. La. 2011).
[330] *Id.*
[331] *LeBrane v. Lewis*, 292 So.2d 216, 217–18 (La. 1974).
[332] *Benoit v. Capitol Mfg. Co.*, 617 So.2d 477, 479 (La. 1993).
[333] *Crawford v. Wal-Mart Stores, Inc.*, No. 10-805-M2, 2011 WL 3206196, at *2 (M.D. La. July 26, 2011).

employment rooted, (2) reasonably incidental to the performance of the employee's duties, (3) occurred on the employer's premises, and (4) occurred during the hours of employment.[334] However, this is not an exclusive list of factors.[335] The Louisiana Supreme Court has stated, "[t]he particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment."[336] Essentially, once it is established that the employee acted within the course of his employment, the employer's vicarious liability hinges on whether the "purpose of serving the employer's business actuated the employee to any appreciable extent."[337]

Because the state law tort claims of assault and battery remain against Lawrence, the City/Parish could be found vicariously liable for Lawrence's conduct if the jury finds that Lawrence committed these torts. Accordingly, summary judgment is DENIED as to the City/Parish on the vicarious liability claim.

## V.    CONCLUSION

For the foregoing reasons, Motions for Summary Judgment filed by Defendants Matthew Wallace[338] and Joseph Carboni[339] are GRANTED, and these Defendants are dismissed from this case with prejudice. The Motion for Summary Judgment by Troy Lawrence, Jr. is GRANTED in part and DENIED in part as set forth above.[340] The Motion

---

[334] *Id.*
[335] *Miller v. Keating*, 349 So.2d 265, 268 (La. 1977).
[336] *Baumeister v. Plunkett*, 95-2270, p. 4. (La. 5/21/96), 673 So. 2d 994, 997.
[337] *Crawford*, 2011 WL 3206196, at *2 (citing *Johnson v. Littleton*, 45,323 (La. App. 2 Cir. 5/19/10) 37 So. 3d 452).
[338] Rec. Doc. 142.
[339] Rec. Doc. 143.
[340] Rec. Doc. 144.

for Summary Judgment by the City of Baton Rouge, Parish of East Baton Rouge is GRANTED in part and DENIED in part as set forth above.[341]

> **IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 13, 2026</u>.

<u>_Shelly D. Dick_</u>

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[341] Rec. Doc. 150.